COOLEY LLP
BRIAN KLEIN (258486)
(bklein@cooley.com)
VIVIANA ANDAZOLA MARQUEZ (354307)
(vandazolamarquez@cooley.com)
350 South Grand Avenue, Suite 3200
Los Angeles, California 90071
Telephone: +1 213 561 3250
Facsimile: +1 213 561 3244

JOHN BOSTIC (264367)
(jbostic@cooley.com)
3175 Hanover Street
Palo Alto, California 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400

Attorneys for Claimant Capstone Limited

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $79,109,828.17 SEIZED FROM WELLS FARGO SECURITIES LLC ACCOUNT NO. 1BD68863, HELD IN THE NAME OF CAPSTONE LIMITED,<br><br>APPROXIMATELY $1,861,106.49 SEIZED FROM WELLS FARGO BANK ACCOUNT NO. 9852677500, HELD IN THE NAME OF CAPSTONE LIMITED,<br><br>APPROXIMATELY $2,056,207.08 SEIZED FROM JPMORGAN CHASE BANK ACCOUNT NO. 000000723026970, HELD IN THE NAME OF CAPSTONE LIMITED,<br><br>APPROXIMATELY 1,122,483.28 USDT FROM VIRTUAL CURRENCY ADDRESS TJCaXo9kCxmXXcD4yrELjvzPvAPjg2Tvhe, AND<br><br>APPROXIMATELY 54,578.45 USDT FROM VIRTUAL CURRENCY ADDRESS TKKrYKhyaLRd60VqjCAL31akjvDkwwMHf6,<br><br>Defendants. | Case No. 2:26-cv-02476-DAD-CKD<br><br>**CLAIMANT CAPSTONE LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS UNITED STATES' COMPLAINT FOR FORFEITURE IN REM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Hon. Dale A. Drozd<br>Hearing Date: November 16, 2026<br>Time: 1:30 p.m.<br>Location: Courtroom 4 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 16, 2026 at 1:30 p.m., or as soon after as this matter may be heard, in Courtroom 4 of this Court, located at 501 I Street, Sacramento, California 95814, before the Honorable Dale A. Drozd, claimant Capstone Limited will and does move, pursuant to Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Rule 12(b) of the Federal Rules of Civil Procedure, for dismissal of the government's Complaint.

This motion is made on the grounds that: (1) the Complaint fails to state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial pursuant to Rule 12(b), because it fails to establish the requisite nexus between each specifically identified defendant asset and the alleged predicate offenses; and (2) the Complaint's verification does not comply with Supplemental Rule G(2), resulting in this Court lacking in rem jurisdiction over the defendant assets.

Pursuant to the Court's standing order, counsel for Capstone Limited met and conferred with counsel for the government on September 30, 2026, regarding this Motion and its arguments. The parties were unable to reach an agreement resolving the issues discussed, and Capstone therefore brings this Motion.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such further argument and evidence as may be presented at or before the hearing on this motion.

Dated: October 5, 2026

Respectfully submitted,

COOLEY LLP

By: */s/ Brian Klein*
Brian Klein

Attorneys for Capstone Limited

# TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1

II. BACKGROUND ... 3

III. LEGAL STANDARD ... 5

IV. ARGUMENT ... 7

A. The Complaint's First Claim Fails to Allege the Requisite Nexus for Any of Its Four Alleged Predicate Offenses ... 7

B. The Complaint's Second Claim Fails to Allege Sufficient Facts to Conclude Capstone Was Operating as an Unlicensed Money-Transmitting Business ... 13

C. The Complaint's Third Claim Fails to Allege the Requisite Nexus, and the Complaint's Own Commingling Allegations Affirmatively Defeat Tracing ... 16

D. Across All Three Claims, the Complaint's Aggregated "Defendant Assets" Pleading Fails Supplemental Rule G(2)(f)'s Particularity Requirement ... 19

E. The Government's Verification of the Complaint is Insufficient under the Law and Requires Dismissal ... 20

V. CONCLUSION ... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 14

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) .......... 14

*In re Incomnet, Inc.*,
463 F.3d 1064 (9th Cir. 2006) .......... 11

*Kelly v. United States*,
590 U.S. 391 (2020) .......... 8

*Kulshrestha v. First Union Com. Corp.*,
33 Cal.4th 601 (2004) .......... 21

*United States v. $191,910.00 in U.S. Currency*,
16 F.3d 1051 (9th Cir. 1994) .......... 6, 7

*United States v. $215,587.22 in U.S. Currency Seized from Bank Acct. No. 100606401387436*,
306 F. Supp. 3d 213 (D.D.C. 2018) .......... 6, 14

*United States v. $84,740.00 U.S. Currency*,
900 F.2d 1402 (9th Cir. 1990) .......... 20, 21, 22

*United States v. 1980 Lear Jet, Model 35A, Serial No. 277*,
38 F.3d 398 (9th Cir. 1994) .......... 16

*United States v. Aguilar*,
782 F.3d 1101 (9th Cir. 2015) .......... 5, 6, 7, 9, 12, 19, 20

*United States v. Approximatley $22,520 in U.S. Currency*,
2014 U.S. Dist. LEXIS 53755 (N.D. Cal. Apr. 2, 2014) .......... 21

*United States v. Marolf*,
173 F.3d 1213 (9th Cir. 1999) .......... 7

*United States v. Real Prop. 874 Gartel Dr.*,
79 F.3d 918 (9th Cir. 1996) .......... 9, 10

*United States v. Real Prop. at 2659 Roundhill Dr.*,
194 F.3d 1020 (9th Cir. 1999) .......... 5

*United States v. Real Prop. Known as 22249 Dolorosa St.*,
190 F.3d 977 (9th Cir. 1999)........................................................................................ 6, 19

*United States v. Rogers*,
321 F.3d 1226 (9th Cir. 2003)........................................................................................ 17, 18

*United States v. Santos*,
553 U.S. 507 (2008)........................................................................................................ 11

*United States v. Two Condos. Located at 465 Ocean Drive, Units 315 & 316, Miami Beach, Fla. 33139*,
2021 WL 3810273 (N.D. Cal. Aug. 26, 2021)................................................... 6, 8, 9, 10, 19

*United States v. Van Alstyne*,
584 F.3d 803 (9th Cir. 2009)........................................................................................... 12

**Statutes, Regulations, and Rules**

18 U.S.C. § 981 ........................................................................................ 6, 10, 11, 13, 19

18 U.S.C. § 983 ........................................................................................................ 6, 14, 17

18 U.S.C. § 1014 ........................................................................................................ 9, 10, 11

18 U.S.C. § 1344 ............................................................................................................... 8, 9

18 U.S.C. § 1956 ........................................................................................................ 17, 18, 19

18 U.S.C. § 1957 ................................................................................................................. 19

18 U.S.C. § 1960 ............................................................................................................ 13, 14

Cal. Civ. Proc. Code § 446.................................................................................................. 21

Cal. Civ. Proc. Code § 2015.5.............................................................................................. 21

Cal. Fin. Code § 2001 .......................................................................................................... 15

Cal. Fin. Code § 2003 .......................................................................................................... 14

Cal. Fin. Code § 2030 .......................................................................................................... 14

Cal. Fin. Code § 2101 .......................................................................................................... 15

Fla. Stat. § 560.103 ............................................................................................................. 15

Mo. Rev. Stat. § 361.906 ..................................................................................................... 16

N.Y. Banking Law § 641 ..................................................................................................... 16

Nev. Rev. Stat. § 671.013 .................................................................................................... 16

Ohio Rev. Code Ann. § 1315.02 .......... 16

31 C.F.R. § 1010.100 .......... 16

Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure G .......... 5, 6, 20

**Other Authorities**

Jane M. Azia, Director of Non-Depository Institutions and Consumer Protection, *Industry Letter: Money Transmitters with No Physical Presence in New York*, N.Y. Dep't of Fin. Servs. (Mar. 31, 2011) .......... 16

*Capstone Products*, Capstone-online.com .......... 3

Ninth Circuit Model Criminal Jury Instruction 15.35 .......... 8, 9

Ninth Circuit Model Criminal Jury Instruction 15.39 .......... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The government does not have a viable civil asset forfeiture case, and should never have seized the properties in this action.[1] Capstone Limited, a FinCEN-registered business and financial-technology software developer based in the United States, is the lawful owner and bailee of the five seized properties. Of the approximately $83 million in bank funds and nearly 1.2 million USDT (a cryptocurrency stablecoin pegged 1:1 to the U.S. dollar) that the government wrongfully seized from accounts and cryptocurrency wallets held in Capstone's name, approximately $79.1 million—fully 95% of the funds at issue—sits in a single Wells Fargo Securities brokerage account holding legitimate funds that, according to the Complaint's own allegations, were tied to U.S. Treasury securities owned by a Capstone customer (or its customer's customers), not funds Capstone acquired for itself, and not funds the Complaint alleges were unlawfully obtained in the first place. And even as to the JPMorgan Chase account that the Complaint ties to the alleged impersonation-fraud scheme, the Complaint only alleges the purported victims' money was previously commingled with other funds in it, but it does not allege that any of those funds are *currently* in that account or were ever in the seized Wells Fargo brokerage account holding the $79.1 million. Thus, none of the seized properties, including the $79.1 million Wells Fargo brokerage account, represent alleged ill-gotten gains. The government has nonetheless seized these properties and publicly filed this Complaint resulting in international media coverage that has unfairly tarnished Capstone's reputation.

The unnecessary reputational damage Capstone has suffered is the result of the government seeking to avoid under seal litigation. Specifically, after seizing Capstone's accounts and cryptocurrency wallets, the government sat on those funds for months without initiating any civil or criminal proceeding. It was only after EQIBank Limited, a Capstone customer and regulated bank, moved under seal pursuant to Federal Rule of Criminal Procedure 41(g) for return of seized property that the government hastily filed this public forfeiture action to avoid having to respond

[1] For purposes of this motion alone, Capstone is required to accept the Complaint's allegations as true. Capstone does, in fact, dispute the allegations—including that it engaged in any criminal conduct—and reserves all rights.

substantively to EQIBank's motion, and as a result, making this matter public and unjustly hurting Capstone.

This Court should dismiss the Complaint with prejudice for two independent reasons. As an initial matter, the Complaint fails at the outset because its verification is defective. The FBI Agent's verification does not comply with certain California Code of Civil Procedure sections, which it must under Ninth Circuit law for this type of forfeiture proceeding. This error deprives this Court of jurisdiction over the defendant property, *i.e.*, the funds seized from Capstone accounts and cryptocurrency wallets, and requires prompt dismissal. Because this defect is jurisdictional and independently dispositive, this Court need not reach the merits to dismiss the Complaint.

Substantively, even accepting its allegations as true, the Complaint fails to state a claim. The Complaint's first claim, brought under 18 U.S.C. § 981(a)(1)(C), relies on four alleged predicate offenses—wire fraud, bank fraud, false statements, and operation of an unlicensed money-transmitting business—but fails to plead particularized facts supporting any of those alleged offenses or connecting the alleged offenses to the specific property seized. The second claim, brought under Section 981(a)(1)(A), alleges that Capstone was required to obtain state money-transmitter licenses but fails to identify the state laws allegedly violated; in fact, under the laws of the states listed in the Complaint, Capstone was *not* required to obtain a license. The third claim, also under Section 981(a)(1)(A), alleges money laundering under 18 U.S.C. §§ 1956 and 1957, but it fails to allege facts supporting a belief that Capstone knew the funds at issue were derived from unlawful activity.

Overall, the Complaint does not do the work the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions require in a civil forfeiture proceeding. Not only is it not properly verified, but it also does not plead detailed facts connecting each specifically identified seized asset to a forfeitable offense. Instead, the Complaint characterizes Capstone's alleged business model, describes an instance where a third party purportedly misused Capstone's platform to engage in fraud, and then asks this Court to infer that whatever balance happened to remain in each account or wallet on the date of seizure is traceable to, or was involved in, the alleged criminal conduct. The government offers a lopsided

and unfairly prejudiced view of Capstone's business instead of concrete facts establishing the forfeitability of the specific balances seized, failing to meet the particularity standards under the applicable law.

The Complaint should be dismissed with prejudice.

## II. BACKGROUND

As alleged in the Complaint, Capstone Limited is a U.S.-based business incorporated in the State of Montana. (Compl. ¶ 10.) Capstone is registered as a money service business with the Financial Crimes Enforcement Network ("FinCEN"), the federal government entity responsible for administering provisions of the Bank Secrecy Act. (*Id.* ¶ 11.) Since its inception, Capstone has developed financial technology-related software applications.[2] Capstone's customers include EQIBank Limited, called "Dominica Bank 1" in the Complaint, which is a bank registered in the Commonwealth of Dominica; EQIBank's customers include entities described as "Cryptocurrency Company 1," which is a foreign entity that issues a "stablecoin" called USDT, and which is affiliated with what is described as "Cryptocurrency Exchange 1" in the Complaint. (*Id.* ¶¶ 14, 16.) Capstone allegedly facilitated transfers of money on behalf of and held U.S. Treasury securities owned by these entities. (*Id.* ¶¶ 3, 48, 63.) The Complaint does *not* allege that this arrangement was unlawful or that the funds deposited into Capstone's accounts as a result of this arrangement were proceeds of criminal or other illegal activity.

Completely separate from the above arrangement, the Complaint alleges that Capstone's JPMorgan Chase account ending in 6970 was used in an impersonation-fraud scheme. Purported fraudsters posed as credit-card company representatives and law enforcement officials and convinced purported victims that they needed to transfer large deposits of money to avoid arrest or the freezing of assets. (*Id.* ¶ 52.) The alleged victims then transferred money to the Chase x6970 account. (*Id.* ¶ 53.) Following the fraudulent transfers, Capstone allegedly sent corresponding transfers of USDT from two cryptocurrency wallets to an unidentified foreign counterparty that is also not alleged to be the fraudsters. (*Id.* ¶ 59.) The Complaint does *not* allege that Capstone perpetrated this fraud or benefitted from it in any way. Nor does the Complaint allege that any of

---

[2] *See, e.g.*, *Capstone Products*, Capstone-online.com, https://perma.cc/5688-7ZM8.

those alleged victim funds remain in the seized accounts or cryptocurrency wallets for that matter or were ever in the Wells Fargo brokerage account that was seized with $79.1 million in it. (*See id.* ¶ 58.)[3] Instead, the Complaint acknowledges that Capstone's Chief Operating Officer reported the fraudulent transfers to the local police department so law enforcement could conduct a further investigation, which is inconsistent with any knowledge of the scheme. (*Id.* ¶ 55.)

The Complaint does not claim that any criminal charges were brought against the fraudsters, nor is Capstone aware of any such charges. Further, no civil or criminal action has been brought against Capstone or any individual affiliated with it in connection with the circumstances referenced in the Complaint. Yet the government moved to seize Capstone accounts and cryptocurrency wallets. On March 6, 2026, Magistrate Judge Chi Soo Kim authorized seizure warrants for the two cryptocurrency wallets and the JPMorgan Chase account now at issue, citing 18 U.S.C. §§ 981(a)(1)(A) and (C) and 982(a)(1) as the forfeiture bases. On June 1, 2026, Magistrate Judge Carolyn K. Delaney authorized two additional seizure warrants for the Wells Fargo Securities and Wells Fargo Bank accounts, citing 18 U.S.C. § 981(a)(1)(C).

For months after the seizures, the government filed no civil forfeiture complaint and no criminal indictment to justify its continued retention of the property. It was only after a third party, and Capstone's bailor, EQIBank, filed a motion seeking the return of seized funds that the government hastily filed this forfeiture action. The procedural history of the related litigation confirms this sequence of events.

On June 29, 2026, EQIBank filed a motion in this District pursuant to Federal Rule of Criminal Procedure 41(g) seeking return of seized funds held in Capstone's accounts. (*See EQIBank Ltd. v. United States*, No. 2:26-mc-00208-DAD-CKD (E.D. Cal.) ("*EQIBank* Case"), Dkt. 1.) EQIBank argued that the government had no basis to retain the property because no civil forfeiture complaint or criminal indictment had been filed. (*Id.*)

---

[3] Paragraph 58 uses the past tense when discussing this: "The seized balance of Chase x6970 *was* commingled but *included* payments from the impersonation fraud scheme victims *and* funds transferred from Wells Fargo x7500. The funds thus reflected both the impersonation fraud scheme and Capstone's money transmitting activities. Capstone used Chase x6970 in both." (Emphasis added.)

On July 13, 2026, the government filed an opposition to EQIBank's Rule 41(g) motion. (*EQIBank* Case, Dkt. 15.) In its opposition, the government did not contest any of EQIBank's factual allegations. Instead, the government's sole argument was that "[t]h[is] Court should decline to assume equitable jurisdiction over [EQIBank's] Rule 41(g) motion once the United States files a civil forfeiture complaint against the seized funds," and it stated that it "anticipate[d] filing that complaint before the Thursday July 16, 2026 hearing." (*Id.* at 1.)

On July 14, 2026, EQIBank filed a reply memorandum, arguing that the government's "tack to moot [EQIBank's] Rule 41(g) motion via an anticipated civil forfeiture action is pure gamesmanship that evidences a callous disregard for the continued operations of a non-U.S. bank." (*EQIBank* Case, Dkt. 16 at 1.)

This is the backdrop for the government's Complaint, filed on July 15, 2026 (the day after EQIBank filed its reply). The Complaint seeks civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C) of: (1) approximately $79,109,828.17 seized from a Wells Fargo Securities account held in the name of Capstone; (2) approximately $1,861,106.49 seized from a Wells Fargo Bank account held in the name of Capstone; (3) approximately $2,056,207.08 seized from a JPMorgan Chase Bank account held in the name of Capstone; (4) approximately 1,122,483.28 USDT from a virtual currency address; and (5) approximately 54,578.45 USDT from a second virtual currency address.

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint seeking forfeiture in rem pursuant to 18 U.S.C. § 981, like in this case, must satisfy the pleading requirements set forth by the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R."), including that the complaint "be verified." *See United States v. Real Prop. at 2659 Roundhill Dr.*, 194 F.3d 1020, 1024 n.3 (9th Cir. 1999); Supp. R. G(2)(a). A claimant who files a verified claim stating their interest in the defendant property may challenge the sufficiency of the complaint pursuant to Rule 12(b), including on the basis of the verification and the detailed-facts requirements set by Supplemental Rule G(2). Supp. R. G(8)(b).

Such complaints are governed by "a higher standard" than the usual "notice pleading" standard. *United States v. Aguilar*, 782 F.3d 1101, 1108-09 (9th Cir. 2015) (citation omitted). A claim must meet the typical requirement that it "contain sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). But the Supplemental Rules additionally require that a claim state "the circumstances giving rise to the forfeiture claim with sufficient particularity that the claimant can commence a meaningful investigation of the facts and draft a responsive pleading and permit a reasonable belief for pleading purposes that the property in question is subject to forfeiture." *Aguilar*, 782 F.3d at 1108-09 (cleaned up); *see also* Supp. R. G(2)(f) (complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial").

To state a claim for forfeiture pursuant to Section 981, the government must establish a nexus between the defendant property and criminal conduct. For forfeiture pursuant to Section 981(a)(1)(C), the government must plead that the property "constitutes or is derived from proceeds traceable to" specified unlawful activity, whereas for forfeiture pursuant to Section 981(a)(1)(A), the government must plead that the property is "involved in" or "traceable to such property involved in" certain offenses. *See* 18 U.S.C. § 981(a). When asserting a theory based on tracing, the government must at least plausibly allege the "general contours . . . of the chain linking the property at issue back to unlawful conduct." *See United States v. Two Condos. Located at 465 Ocean Drive, Units 315 & 316, Miami Beach, Fla. 33139*, 2021 WL 3810273, at *3 (N.D. Cal. Aug. 26, 2021). Where the government instead proceeds under an "involved in" theory, it must plead facts sufficient to support a reasonable belief that it can demonstrate a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3); *see also United States v. $215,587.22 in U.S. Currency Seized from Bank Acct. No. 100606401387436*, 306 F. Supp. 3d 213, 221-22 (D.D.C. 2018). Under either theory, the government's obligation applies separately to *each defendant asset*. *See United States v. Real Prop. Known as 22249 Dolorosa St.*, 190 F.3d 977, 982 (9th Cir. 1999) (holding that the government's obligation to establish forfeitability applies separately to each defendant asset).

Forfeiture statutes are strictly construed against the government, and courts are "reluctant to find that a statute allows forfeiture where a plausible interpretation of the statute would not allow it." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994), *superseded on other grounds as stated in United States v. $80,010 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). Courts are "particularly wary of civil forfeiture statutes, for they impose 'quasi-criminal' penalties without affording property owners all of the procedural protections afforded criminal defendants." *Id.*; *see also United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (forfeitures "should be enforced only when within both letter and spirit of the law") (citation omitted).

## IV. ARGUMENT

This Court should dismiss the Complaint for two reasons, either of which is independently sufficient. First, the Complaint does not plead, as it must under Supplemental Rule G(2), the circumstances giving rise to the forfeiture claim with sufficient particularity to permit a reasonable belief that the specific property identified is subject to forfeiture, and thus fails to comply with Rule 12(b). Second, the FBI Special Agent's verification of the Complaint does not satisfy California Code of Civil Procedure Sections 446 and 2015.5—which it has to incorporate under Supplemental Rule G(2)(a). That defect deprives this Court of subject matter jurisdiction and requires dismissal on its own, without regard to the sufficiency of the Complaint's factual allegations.

### A. The Complaint's First Claim Fails to Allege the Requisite Nexus for Any of Its Four Alleged Predicate Offenses

The government's first claim for relief in the Complaint seeks forfeiture under 18 U.S.C. § 981(a)(1)(C) on the theory that the defendant property constitutes or is derived from proceeds traceable to four alleged predicate offenses: wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), false statements to a financial institution (18 U.S.C. § 1014), and operation of an unlicensed money transmitting business (18 U.S.C. § 1960). But the Complaint fails to plead facts permitting a reasonable belief that any of the five defendant assets constitutes or is derived from proceeds traceable to any of these alleged predicate offenses. *Aguilar*, 782 F.3d at 1108-09. For the

same reasons, the government's complaint does not provide enough particularity for Capstone to conduct a meaningful investigation in response to the allegations. *Id.*

**1. Inadequately Pled Wire Fraud (18 U.S.C. § 1343) and Bank Fraud (18 U.S.C. § 1344)**

The Complaint names wire fraud and bank fraud as two of the four alleged predicate offenses underlying the first claim, but it does not plead particularized facts supporting either alleged offense—much less how any of the defendant assets could be proceeds of such an offense.

Wire fraud reaches "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *See Kelly v. United States*, 590 U.S. 391, 398 (2020) (quoting 18 U.S.C. § 1343). The elements the government must prove to show a violation of Section 1343 are: (1) that the defendant knowingly participated in a scheme to defraud for the purpose of obtaining money or property by means of false or fraudulent representations; (2) that the statements made were material; (3) that the defendant acted with the intent to deceive and cheat; and (4) that the defendant used an interstate or foreign wire communication to carry out an essential part of the scheme. Ninth Circuit Model Criminal Jury Instruction 15.35.

The government describes Capstone in the Complaint as allegedly receiving deposits and sending outgoing wires—including a pattern of deposits into Wells Fargo x7500 followed by same-day withdrawals to banks in China. (Compl. ¶ 31.) And significant sums of money allegedly flowed between Wells Fargo x7500 and Wells Fargo x8863. (*Id.* ¶¶ 46-48.) But those are simply the mechanics of what the Complaint alleges is a money-transmitting business, not fraudulent wire transmissions in furtherance of a scheme to defraud. The government makes no attempt to allege in the Complaint that Capstone engaged in a fraudulent scheme to obtain money from a victim, and identifies no false or fraudulent representations in service of the alleged scheme. Having failed to outline a scheme to defraud, the Complaint clearly fails to plead facts supporting a belief that any of the specific seized assets are proceeds of wire fraud. Accordingly, this theory fails at the pleading stage. *See, e.g.*, *Two Condos.*, 2021 WL 3810273, at *7 (dismissing the government's wire fraud forfeiture theory because the complaint failed to plead "the basic contours of the chain linking any

fraudulent wire transfers to" the defendant property).

Bank fraud requires a scheme "to defraud a financial institution" or to "obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. In the Ninth Circuit, this offense requires proof that, among other things, the defendant knowingly executed a scheme to defraud a financial institution out of money or property, and made statements as part of that scheme that had a natural tendency to influence a person to part with money or property. Ninth Circuit Model Criminal Jury Instructions 15.35 & 15.39. It is unclear from the Complaint which alleged facts demonstrate that these elements are met in support of the government's bank fraud theory. While the Complaint discusses certain purported statements made to one or more banks, none of the Complaint's allegations articulate a scheme to *defraud* a financial institution within the meaning of 18 U.S.C. § 1344. The Complaint contains no allegations of false statements made with the intent to fraudulently obtain money or property from a bank. Nor does it contain allegations that such a scheme to defraud succeeded and generated proceeds in the form of the defendant assets. Accordingly, this theory is insufficiently pled.

Because the government does not articulate in the Complaint a specific fraudulent scheme, a specific wire transmission in furtherance of that scheme, or a specific financial institution that was itself the victim of a scheme to defraud, there is nothing permitting a reasonable belief that any of the five defendant assets constitutes or is derived from proceeds traceable to wire fraud or bank fraud as distinct offenses. *See Aguilar*, 782 F.3d at 1108-09. Dismissal is warranted where the government has made no attempt at "actually articulating its wire fraud [or bank fraud] theory." *Two Condos.*, 2021 WL 3810273, at *7.

**2. Inadequately Pled False Statements on Account Applications (18 U.S.C. § 1014)**

The government claims in the Complaint that Capstone "made false statements about the nature of Capstone's business and its intended use of the accounts" it held at Wells Fargo, Citi, and Chase in violation of 18 U.S.C. § 1014, but the Complaint fails to plead particularized facts supporting this offense as to any of the three banks. (*See* Compl. ¶ 9.) Section 1014 prohibits

"knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action of" a federally insured financial institution. 18 U.S.C. § 1014; *see United States v. Real Prop. 874 Gartel Dr.*, 79 F.3d 918, 920 (9th Cir. 1996) (same). The Complaint's Section 1014 theory fails for two independent reasons.

First, even taking the allegations as to Wells Fargo, Citi, and Chase as sufficient to state an offense under Section 1014, the Complaint's theory still fails because the government fails to sufficiently *connect* the alleged false statements to any of the specific property seized. The first claim expressly relies on Section 981(a)(1)(C), which requires the defendant property to "constitut[e] or [be] derived from proceeds traceable to" the predicate offense. To satisfy Rule G(2)(f), the government must plead "the basic contours of a chain linking" each defendant asset to that offense. *See Two Condos.*, 2021 WL 3810273, at *4-5.

The Complaint does not do that work. It does not identify which, if any, of the funds deposited into or withdrawn from the Wells Fargo or Citi accounts are properly considered "proceeds traceable to" the alleged false statements themselves. Indeed, it is unclear how the supposed Section 1014 violations described in the Complaint would even yield "proceeds" in the first place. There are no allegations that the bank action Capstone purportedly sought to influence involved the granting of a loan or any other transfer of money or property to Capstone. Nor is there any allegation that any of the seized property came into Capstone's possession due to the alleged false statements to banks. The Complaint alleges that Capstone's accounts received both purportedly illicit and indisputably legitimate funds, yet it offers no particularized factual basis to believe that the balances seized constitute proceeds of Section 1014 violations in particular. This failure is fatal. *See Two Condos.*, 2021 WL 3810273, at *5 (dismissing a tracing-based forfeiture theory where the complaint's "non-conclusory allegations, if true, would not entitle the government to relief" because the temporal and transactional links between the alleged fraud and the property were missing).

Second, the Complaint does not adequately plead the elements of the underlying offense as to Chase. The Complaint alleges that Capstone represented one version of the nature of the Victim 1 wire to Chase as payment for software services, while representing that it was a cryptocurrency

transaction to the police. (Compl. ¶¶ 54-55.) But the Complaint does not articulate how the purported representation made to Chase was false and, critically, does not allege what action by Chase Capstone intended to influence through its statement.

Because the Complaint neither connects the alleged false statements to any of the five defendant assets nor adequately pleads the elements of a Section 1014 offense, the government's Section 1014 theory cannot support forfeiture under the first claim.

**3. Inadequately Pled Unlicensed Money Transmitting Business (18 U.S.C. § 1960)**

The government's 18 U.S.C. § 1960 predicate theory fares no better. The Complaint alleges that Capstone "operated an unlicensed money transmitting business across its Citi, Wells Fargo, and Chase accounts, from its earliest transactions through the seizure of the defendant funds." (Compl. ¶ 62.) But the first claim requires forfeiture of property that "constitutes or is derived from proceeds traceable to" a violation of Section 1960. 18 U.S.C. § 981(a)(1)(C).

Even accepting the government's characterization of that activity as unlicensed for purposes of this argument only—a premise Capstone disputes—the relevant statutory definition of "proceeds" under Section 981 is the one Congress supplied for a lawful service provided without a required license: "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services," with the claimant bearing the burden of proving those direct costs. 18 U.S.C. § 981(a)(2)(B). A customer's principal—the funds a customer sends for transmission to a third party—is never "acquired" by the operator within the meaning of that provision, because the operator has no discretion to use those funds for its own purposes; it is money the operator holds and moves on the customer's behalf, not money the operator receives for itself. *Cf. In re Incomnet, Inc.*, 463 F.3d 1064, 1069-70 (9th Cir. 2006) (an entity that receives funds as agent for a third party, with no discretion to use them for its own purposes, does not acquire dominion over them, and "the agent may be disregarded"); *id.* at 1070 (dominion turns on whether the recipient has "the right to put the money to one's own purposes," not merely on whether it holds or transmits the funds) (citation modified). Only the fees, commissions, or other compensation the operator charges for performing that service, net of its

direct costs, can qualify as "proceeds" of the offense. *Cf. United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion) (proceeds of an offense are not coextensive with the gross receipts that pass through it); *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009) (same). The Complaint does not plead facts permitting a reasonable belief that an identifiable portion of the defendant assets meets that definition, as opposed to being customer funds that merely passed through the accounts in the course of Capstone's business.

The distinction is critical, and the Complaint's own allegations confirm it. The vast majority of the funds purportedly flowing through Capstone's accounts did not belong to Capstone. Hundreds of millions of dollars allegedly moved between Wells Fargo x7500 and Wells Fargo x8863 in connection with the purchase and sale of U.S. Treasury securities that the Complaint identifies as "owned by others." (Compl. ¶¶ 46-48, 63.) Of the approximately $337 million withdrawn from Wells Fargo x7500, "almost two-thirds appeared to go to hundreds of individuals and entities on behalf of Cryptocurrency Company 1/Cryptocurrency Exchange 1." (*Id.* ¶ 48.) What the Complaint describes are funds that Capstone held and moved on others' behalf—not funds Capstone acquired for itself—and thus not proceeds under Section 981(a)(2)(B).

That the Wells Fargo Securities account, x8863, holds approximately $79.1 million—over 95% of the roughly $83 million sought—makes this deficiency most acute. The Complaint cannot forfeit the single largest seized asset by grouping it with four much smaller accounts under the same undifferentiated business narrative; it must still identify some amount Capstone acquired for itself from that account, and it never does. The Complaint makes vague references to compensation, but it makes no effort to identify any amount Capstone actually acquired for itself—as opposed to customer funds merely transmitted through its accounts—let alone connect any such amount to the five defendant assets. Instead, the Complaint lumps together approximately $83 million in seized balances and cryptocurrency and declares all of it "proceeds traceable" to Section 1960. (*Id.* ¶¶ 62-75 (purporting to allege facts showing "*involvement*" of Capstone accounts in unlicensed money transmitting business, as opposed to proceeds from that activity).) That is precisely the kind of aggregate, undifferentiated pleading that Supplemental Rule G(2)(f) prohibits. *See Aguilar*, 782 F.3d at 1108-09.

The Complaint's theory, taken to its logical endpoint, would make every dollar that passes through any business alleged to be an unlicensed money transmitter forfeitable as Section 1960 "proceeds"—regardless of whether those funds belong to the operator or to its customers, and regardless of whether those funds have any connection to the alleged licensing violation. That is not the law under Section 981(a)(1)(C), which requires the property sought to "constitut[e] or [be] derived from proceeds traceable to" the offense—not merely to have passed through an account also used in the offense. Under Section 981(a)(2)(B)'s definition of "proceeds" as the amount acquired through the illegal transactions, less direct costs, a complaint invoking Section 981(a)(1)(C) should identify an amount that meets that definition and connect it to the specific defendant asset sought. The Complaint does neither: it identifies no amount Capstone acquired for itself, and it does not connect any such amount to any of the five defendant assets. The Section 1960 theory therefore cannot support forfeiture under the first claim.

Finally, even if the government could show that any of the seized assets were proceeds from a money transmitting business, the Complaint still fails to adequately plead a violation of Section 1960, for the reasons discussed in Section B below.

### B. The Complaint's Second Claim Fails to Allege Sufficient Facts to Conclude Capstone Was Operating as an Unlicensed Money-Transmitting Business

The Complaint's second claim for relief relies on the presumption that Capstone was required to obtain money-transmitter licenses ("MTLs") in multiple states across the country. (*See* Compl. ¶ 77.) But the Complaint lacks sufficient factual allegations supporting this presumption. Nor could it, because under the laws of the states mentioned in the Complaint, Capstone was *not* required to obtain a license. This Court should accordingly dismiss the second claim.

The Complaint does not identify the state laws under which Capstone was allegedly required to obtain an MTL with the required sufficient particularity to allow the Court to conclude that the listed accounts were "involved in a transaction or attempted transaction in violation of section 1960." 18 U.S.C. § 981(a)(1)(A) (citation modified). Section 1960 prohibits the operation of an "unlicensed money transmitting business," which includes a money transmitting business that "is operated without an appropriate money transmitting license in a State where such operation is

punishable as a misdemeanor or felony under State law." 18 U.S.C. § 1960(b)(1)(A).[4] Accordingly, to effect a civil forfeiture of each account under this theory, the government is required to show that Capstone was required to hold an MTL in each relevant state. *See, e.g.*, *$215,587.22 in U.S. Currency*, 306 F. Supp. 3d at 221-22 (analyzing whether complaint sufficiently alleges violation of Sec. 1960(b)(1)(A) by analyzing whether claimant was required to obtain an MTL under state law); *see also* 18 U.S.C. § 983(c)(3) (requiring a "substantial connection between [each] property and the offense"). That is impossible without identifying the specific state laws Capstone allegedly violated, which the Complaint fails to do. Instead, the Complaint contains conclusory statements claiming that the relevant states required licenses—without citing a single statute—and that Capstone was not licensed. (Compl. ¶¶ 65-69.) Those are legal conclusions that this Court is not required to accept as true. *See Twombly*, 550 U.S. at 555. Lacking sufficiently detailed facts regarding the state laws Capstone allegedly violated, the government cannot state a claim that the accounts were involved in the operation of an unlicensed money transmitting business in violation of Section 1960.

It is not just lack of detail that requires dismissal of this claim. The government also fails to allege activity that would trigger licensing requirements in the relevant states, as a matter of law. Take California as an example. (*See* Compl. ¶ 66.) California's Money Transmitting Act ("MTA") prohibits engaging in "the business of money transmission in [the] state . . . unless the person is licensed." Cal. Fin. Code § 2030(a). "Money transmission" is defined as "[r]eceiving money for transmission from a person located in [the] state." *Id.* § 2003(r)(3). The statute goes on to define "[r]eceiving money for transmission" as "receiving money or monetary value in the United States for transmission within or outside the United States." *Id.* § 2003(x). The key words in both definitions are "for transmission." The MTA makes it clear that the statute is meant to regulate

---

[4] Section 1960 contains three different bases for imposing criminal liability for an unlicensed money transmitting business. *See* 18 U.S.C. § 1960(b)(1). Because the second claim for relief only states that Capstone was operating without an MTL in multiple states, which clearly is invoking only subsection (b)(1)(A) of the statute, the other subsections cannot serve as the basis for the government's purported civil forfeiture. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-92 (9th Cir. 2000) ("[T]heories of liability . . . must be alleged in the complaint in order to provide the basis for later trial or summary judgment.").

entities who engage in money transmission *at the direction of senders*, in order to protect those customers. The findings incorporated in the MTA state that "[p]ersons who use money transmission businesses in this state use those businesses for, among other purposes, paying for the necessities of life and transmitting money to family members" and that "[t]he failure of money transmission businesses to fulfill their obligations would cause loss to consumers . . . ." Cal. Fin. Code § 2001(b), (c). The MTA further emphasizes the important role of the sender by requiring licensees to "forward all money received for transmission . . . *to the person designated by the customer*." Cal. Fin. Code § 2101 (emphasis added).

Accordingly, for Capstone to be subject to an MTL requirement in California, it must receive money from a person located in California *for the purpose of transmission on that sender's behalf and at their direction*. But that is not what the Complaint alleges. Rather, it alleges a scheme where Capstone was "process[ing] transactions for" Dominica Bank 1, "an offshore bank registered in the Commonwealth of Dominica." (Compl. ¶ 14.) The Complaint also alleges that Capstone withdrew millions from Wells Fargo x7500 "on behalf of Cryptocurrency Company 1/Cryptocurrency Exchange 1," which are "foreign entit[ies]." (*Id.* ¶¶ 16, 48.) There are no allegations that persons located in California provided funds to Capstone with instructions to transmit the funds to any other party or location, or even that the senders ever had direct contact with Capstone to express a purpose for their payments. That direction is alleged to have come from Dominica Bank 1 or Cryptocurrency Company 1, who are—as the Complaint recognizes—not persons within California or any state. (*See id.* ¶ 14.) Nor do the allegations regarding the impersonation-fraud scheme involving Chase x6970 show any requirement to obtain an MTL; those senders thought they were making payments to the FBI, not sending money for the purpose of transmission. (*Id.* ¶ 53.) Nor does the Complaint allege that senders from California deposited money into Wells Fargo x8863, wallet address wMHf6, or wallet address 2Tvhe for the purpose of transmission.

The other states listed in the Complaint have similar laws requiring a business to have an MTL only where it receives money from a person in the state *for the purpose of transmission*. *See* Fla. Stat. § 560.103(27)(a) (requiring a license for receiving money "for the purpose of acting as

an intermediary to transmit currency"); Mo. Rev. Stat. § 361.906(18)(c) (requiring a license for "[r]eceiving money for transmission from a person located in this state"); Ohio Rev. Code Ann. § 1315.02(A) (prohibiting receipt of money "for transmission from a person located in this state" without license); N.Y. Banking Law § 641(1) (prohibiting "receiving money for transmission" from an individual in the state without license);[5] Nev. Rev. Stat. § 671.013(1)(c) (requiring a license for "[r]eceiving money or credits for transmission from a person located in this State").

These state law definitions of regulated money transmission differ from the Bank Secrecy Act's ("BSA") definition in a critical respect. Under the federal statute, "money transmission services" includes "the *acceptance* of currency, funds, or other value that substitutes for currency from one person." 31 C.F.R. § 1010.100(ff)(5)(i)(A) (emphasis added). The Complaint does allege that Capstone accepted currency from one person and transmitted it to another location. (*See, e.g.*, Compl. ¶ 31.) But for the reasons discussed above, that is insufficient to trigger licensing requirements in the relevant states.

Meanwhile, the Complaint acknowledges that, at the federal level, Capstone was registered with FinCEN as a money service business. (*See id.* ¶ 30.) The Complaint rests on the false premise that the state money transmission laws cover the same activity as the BSA. The differences between these regulatory schemes mean that Capstone was not subject to a state licensing requirement by virtue of the activity alleged in the Complaint. This fact is fatal to the forfeiture theory pled in the second claim.

### C. The Complaint's Third Claim Fails to Allege the Requisite Nexus, and the Complaint's Own Commingling Allegations Affirmatively Defeat Tracing

The allegations in the Complaint do not include sufficient particular facts in support of the third claim for relief. That claim relies on 18 U.S.C. § 981(a)(1)(A) and purported violations of Sections 1956 and 1957, which prohibit the laundering of funds derived from specified unlawful activity. *See United States v. 1980 Lear Jet, Model 35A, Serial No. 277*, 38 F.3d 398, 400 n.1 (9th Cir. 1994). Specifically, the third claim alleges that "Capstone received the proceeds of an

[5] *See* Jane M. Azia, Director of Non-Depository Institutions and Consumer Protection, *Industry Letter: Money Transmitters with No Physical Presence in New York*, N.Y. Dep't of Fin. Servs. (Mar. 31, 2011), https://perma.cc/NWT7-548H.

impersonation-fraud scheme into its Chase and Wells Fargo accounts and converted those proceeds into cryptocurrency transmitted to a foreign counterparty through its wallet address, conducting financial transactions in the proceeds of specified unlawful activity." (Compl. ¶ 79.) But the alleged facts tell a different story.

The government only alleges in the Complaint that the Chase x6970 account was involved in the transactions constituting the impersonation-fraud scheme, not the Wells Fargo accounts or the cryptocurrency wallets. (*See id.* ¶¶ 52-53.) The purported victims allegedly made deposits into Chase x6970, and then an equivalent amount of cryptocurrency was allegedly transferred "to a wallet controlled by a foreign counterparty." (*See id*. ¶¶ 53, 56.) There is no mention that the purported victims transferred funds into either Wells Fargo account or that Capstone transferred the purported victims' funds from Chase x6970 into a Wells Fargo Account. (*See id*. ¶ 57 (alleging a transfer from Wells Fargo x7500 into Chase x6970 but not the reverse).)

The Complaint similarly lacks sufficient allegations that the two cryptocurrency wallets were used in the impersonation-fraud scheme. It alleges in conclusory terms that "Capstone used both wallets to settle fraud conversions." (*See id*. ¶ 59.) But there is no allegation that the victims' funds from Chase x6970 were transferred into those specific cryptocurrency wallets by Capstone to then pass onto the foreign counterparty. Instead, the Complaint alleges that wallet address wMHf6 "was substantially funded in November 2025," nearly a month before the alleged impersonation-fraud scheme took place. (*Id*. ¶¶ 53, 60.) As for wallet address 2Tvhe, the Complaint alleges that Capstone funded this wallet "from its account at Blockfills"—not from the Chase x6970 account. (*Id*. ¶ 61.) The allegations relating to the cryptocurrency wallets thus fail the requirement that the government show a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

While the government does make specific allegations in the Complaint regarding the involvement of the Chase x6970 account in the impersonation-fraud scheme, those allegations are insufficient to state a forfeiture claim under Sections 1956 and 1957. Critically, both money laundering statutes require knowledge by the defendant that the property involved in the transactions was derived from unlawful conduct. *See* 18 U.S.C. § 1956(a)(1); *United States v.*

*Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003) (explaining Section 1957 requires that the defendant "knew the transaction involved criminal property"). Section 1956 further requires that the defendant either (1) "inten[ded] to promote the carrying on of specified unlawful activity" or (2) knew the transaction was designed "to conceal or disguise the nature . . . of the proceeds of specified unlawful activity" or "to avoid a transaction reporting requirement under State or federal law." 18 U.S.C. § 1956(a)(1).

But there are no sufficiently particular allegations in the Complaint showing that Capstone knew that the victims' deposits were the result of a fraudulent scheme, intended to promote that fraud, or wished to conceal it. The Complaint does not allege that Capstone or any of its representatives: (1) perpetrated the impersonation fraud; (2) aided and abetted the fraud; (3) profited from the fraud; (4) had any contact with the fraudsters; or (5) had any other basis to suspect that the individuals transferring funds to Capstone were fraud victims. (*See* Compl. ¶¶ 51-58.) Instead, it contains one conclusory statement that "[t]he circumstances known to Capstone—including the fake documents and Capstone's own records reconciling each victim deposit to a matching cryptocurrency transfer—reflect that Capstone transmitted funds it knew to be derived from fraud." (*See id.* ¶ 73.) But that alone is insufficient. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Complaint itself alleges that Capstone made misleading statements to conceal its money transmission activity from banks; the Complaint offers no basis to conclude that inconsistent records and statements concerning the impersonation fraud were not similarly motivated. Indeed, the alleged fraudulent transactions proceeded in the same manner as the alleged legitimate transactions for Dominica Bank 1 and Cryptocurrency Company 1, with Capstone purportedly receiving funds from persons it did not communicate with at the direction of a third-party customer.

The third claim for relief only contains allegations relating to the impersonation-fraud scheme, so this Court should decline to rely on additional, unrelated allegations in the Complaint to substantiate this claim. (*See* Compl. ¶ 79.) In any event, those other allegations do not support the conclusion that all the defendant accounts were involved in a violation of Sections 1956 and 1957. None of the funds received into or out of the Wells Fargo accounts on behalf of Dominica

Bank 1 and Cryptocurrency Company 1 are alleged to be proceeds of specified unlawful activity, which is required to support a forfeiture under the third claim. *See* 18 U.S.C. § 981(a)(1)(A) (permitting the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 [or] 1957"); *id.* § 1956(a)(1) (requiring "know[ledge] that the property involved in a financial transaction represents the *proceeds of* some form of unlawful activity") (emphasis added); *id.* at § 1957(a) (requiring that monetary transaction "is *derived from* specified unlawful activity") (emphasis added). The government's Complaint must include sufficient particularity to permit a reasonable belief that the seized funds are subject to forfeiture under this theory—and to enable Capstone to conduct a meaningful investigation of the allegations. *See Aguilar*, 782 F.3d at 1108-09. It fails to meet that standard in either respect. Accordingly, because the Complaint fails to state a claim that the defendant bank accounts were involved in transactions of proceeds of specified unlawful activity under any formulation of the law, the third claim must be dismissed.

**D. Across All Three Claims, the Complaint's Aggregated "Defendant Assets" Pleading Fails Supplemental Rule G(2)(f)'s Particularity Requirement**

Independent of the claim-specific deficiencies set forth above, the Complaint suffers from a structural pleading failure that cuts across all three claims: it treats the five defendant assets as an undifferentiated aggregate instead of pleading facts showing the forfeitability of each asset with the particularity that *Aguilar* and Rule G(2)(f) require. The government must plead the "general contours . . . of the chain linking the property at issue back to unlawful conduct." *Two Condos.*, 2021 WL 3810273, at *3. Where the government joins multiple defendant assets in one action, that obligation applies separately to each one—the government cannot escape its burden as to any one defendant by bundling it with others. *See 22249 Dolorosa St.*, 190 F.3d at 982.

The Complaint names five separate defendant assets held across three account types (a brokerage account, two bank accounts, and two cryptocurrency wallets). And most, if not all, of those assets include currency from multiple sources in proportions not specified in the Complaint. (*See* Compl. ¶¶ 46-48, 58, 63.) Indeed, of the five defendant assets, the Complaint ties actual fraud-victim funds to only one—the approximately $2.06 million JPMorgan Chase account allegedly

used in the impersonation-fraud scheme. (*Id*. ¶¶ 52-53.) The remaining four assets, representing well over 95% of the total amount sought, including the $79.1 million Wells Fargo Securities account and the $1.86 million Wells Fargo Bank account, are tied only to Capstone's Dominica Bank 1 relationship (and Dominica Bank 1's relationship with Cryptocurrency Company 1), which the Complaint does not allege involved any fraud. But instead of addressing how each asset relates to alleged unlawful conduct, the Complaint narrates a general course of business—Capstone's relationships with Dominica Bank 1, Cryptocurrency Company 1, and the unrelated alleged impersonation-fraud scheme—and then aggregates all five assets under broad and conclusory claims for relief without articulating the factual basis for forfeiture of each. To be sure, the Ninth Circuit has held that "the government need not show that all of the claimed property is tainted to satisfy Supplemental Rule G(2)(f)," and that "[w]hether none, all, or only a portion of the defendant property is forfeitable is not determined at the pleadings stage, but at trial." *Aguilar*, 782 F.3d at 1109 (quoting *United States v. One Parcel of Real Prop.*, 921 F.2d 370, 375 (1st Cir. 1990)). But that principle presupposes a complaint that has at least plausibly alleged *some* particularized chain linking the defendant property to unlawful conduct. Here, for the reasons set forth in Sections IV.A through IV.C, the Complaint has not done so for any of the five defendant assets. As a result, the Complaint is not sufficiently particular to permit a reasonable belief that the funds are forfeitable or to enable a meaningful investigation in response. *See id.* at 1108-09.

Because the Complaint fails to plead particularized facts connecting any of the five defendant assets to any forfeitable offense—let alone all of them—the Complaint must be dismissed in its entirety.

### E. The Government's Verification of the Complaint is Insufficient under the Law and Requires Dismissal

The government failed to include a verification stating the location where it was executed or that it was made under the laws of the State of California, as required by law. Supplemental Rule G requires that the government's civil forfeiture complaint "be verified." Supp. R. G(2)(a). This is not a mere formality or technicality. "[V]erification is jurisdictional," meaning that a properly verified complaint is a prerequisite to a court's exercise of jurisdiction over the res. *United States*

*v. $84,740.00 U.S. Currency*, 900 F.2d 1402, 1405-06 (9th Cir. 1990), *overruled on other grounds by Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 89 (1992). In the Ninth Circuit, a district court looks to the law of the state in which it sits to determine what constitutes proper verification in an in-rem action. *Id*. at 1404 (holding that because the Supplemental Rules are silent on the correct form of verification, state law applies). Where the verification is defective under state law, "the appropriate procedure is for the district court to dismiss the complaint" for lack of subject matter jurisdiction. *Id*. at 1406.

In California, a verified pleading must be supported by an affidavit stating that its contents are true. *See* Cal. Civ. Proc. Code § 446. An unsworn declaration may substitute an affidavit where the declaration is (1) signed, (2) dated, (3) certified as true under penalty of perjury, and (4) either states a place of execution within California or expressly recites that the certification is made under the laws of the State of California. *See* Cal. Civ. Proc. Code § 2015.5. The California Supreme Court has made clear that this fourth requirement is not surplusage and must be satisfied either: "(1) by stating the 'place of execution' in California, or (2) by stating that the certification or declaration under penalty of perjury occurs 'under the laws of the State of California.'" *See Kulshrestha v. First Union Com. Corp.*, 33 Cal.4th 601, 611 (2004) (citation omitted). As such, no element of Section 2015.5 may "be omitted altogether" to properly verify a complaint. *Id*.

Here, the Complaint is verified by an FBI Special Agent who declares "under penalty of perjury" that she has read the Complaint and that its contents are "true to the best of my knowledge and belief," based on "the official files and records of the United States and information supplied to me by other law enforcement officers, together with others." Although the verification is dated and signed, it does not state a place of execution within California, nor does it recite that the certification is made under the laws of the State of California. The Agent's verification therefore fails to satisfy Section 2015.5's fourth requirement. An identical omission led to dismissal of the complaint in *United States v. Approximately $22,520 in United States Currency* after the government conceded the omission was fatal. 2014 U.S. Dist. LEXIS 53755, at *1-2 (N.D. Cal. Apr. 2, 2014) (government conceding that its verification was "fatally defective under [California law] for failure to specify the place the declaration was executed within the State of California"

after court ordered supplemental briefing on the verification issue).

The government's defective verification is not a mere technicality that this Court may excuse. Under Ninth Circuit authority, verification of an in-rem forfeiture complaint is a jurisdictional issue independent from the sufficiency of the allegations. *$84,740.00 U.S. Currency*, 900 F.2d at 1405-06. Because the Agent's verification does not satisfy California Code of Civil Procedure Section 2015.5, this Court lacks subject matter jurisdiction over the defendant assets, and the Complaint must be dismissed.

## V. CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: October 5, 2026

Respectfully submitted,
COOLEY LLP

By: */s/ Brian Klein*
Brian Klein

Attorneys for Capstone Limited