ERIC GRANT
United States Attorney
NICHOLAS M. FOGG
KEVIN C. KHASIGIAN
Assistant U. S. Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $79,109,828.17 SEIZED FROM WELLS FARGO SECURITIES LLC ACCOUNT NUMBER 1BD68863, HELD IN THE NAME OF CAPSTONE LIMITED, ET AL.,<br><br>Defendants. | 2:26-CV-02476-DAD-CKD<br><br>UNITED STATES' FIRST SET OF RULE G(6) SPECIAL INTERROGATORIES TO CLAIMANT CAPSTONE LIMITED |

PROPOUNDING PARTY: UNITED STATES OF AMERICA

RESPONDING PARTY: CLAIMANT CAPSTONE LIMITED

SET NO.: ONE

The United States of America, pursuant to Supplemental Rules G(6)(a)(1) and G(6)(b) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, and Federal Rule of Civil Procedure 33 to the extent applicable, hereby requests that claimant **Capstone Limited** ("**Capstone**") provide written, sworn responses to the following interrogatories within *21 days* of receiving this document. When a motion to dismiss is pending, as is the case here, the United States is required to respond to that motion only after receiving fully responsive special interrogatories. In such circumstances, the United States' response to the motion to dismiss shall be filed within *21 days* after the interrogatories

have been fully answered.

Local Rule 250.2(a) for the Eastern District of California provides that the interrogatory is to be "arranged that after each separate question there shall appear a blank space reasonably calculated to enable the answering party to insert the answers and/or objections. The answering party shall answer or object within the spaces provided or, if unable to do so, shall retype the interrogatories along with the answers and/or objections." While the United States provides blank space after each interrogatory, it also intends to send counsel a WORD version of the interrogatories to allow Capstone to format responses as it deems appropriate.

**Instructions for Use**

A. All information is to be divulged which is in the possession of the individual party, his attorney, investigators, agents, employees or other representatives of the named party and his attorney.

B. These interrogatories are intended as continuing interrogatories, and require you to answer by supplemental responses, setting forth any information within the scope of the interrogatories as may be acquired by you, your attorneys or your other representatives following your original responses.

C. If you cannot answer any of the following Interrogatories in full after exercising due diligence in attempting to secure the information necessary to do so, answer to the extent possible, providing all information available to you as of the date of your response to these Interrogatories, explain why you cannot answer the remainder, and state the nature of the information or knowledge that you cannot furnish.

D. Do not incorporate by reference facts contained in documents or publications; specify the precise facts, allegations, names, etc., called for by the Interrogatories, regardless of whether the same are set forth elsewhere.

E. With respect to the application of privileges, if you decline to answer all or part of an Interrogatory, identify a writing or communication, or provide information, on the ground of a claim of privilege, so state in response to the Interrogatory, describe the privileges claimed, and describe the factual basis on which the privilege is claimed.

F. If in answering any of the Interrogatories you encounter any ambiguity, either in the Interrogatory itself or in any definition or instruction which is relevant to the Interrogatory, state in your

answer the matter deemed ambiguous, and the construction employed by you in answering the Interrogatory.

G. Whenever any objection is made to any numbered or letter paragraph of any Interrogatory, or portion thereof, an answer shall be furnished to any other numbered or letter paragraph of such Interrogatory, or portion thereof, as to which there is no objection.

H. Unless otherwise specified, the relevant time period for each of the following Special Interrogatories is from January 1, 2024 through the present.

I. The term "document" as used herein, is to be liberally construed to include without limitation, all originals, copies and duplicates of all tangible forms of graphic, photographic and phonic recordings, including but not limited to, correspondence, letters, records, invoices, contracts, statements, canceled checks, and all other kinds of written or documentary personal property.

J. The term "Defendant Assets" means, collectively, the five *in rem* defendants in the case, and "each" or "a particular" item refers to any one of the defendant assets individually, namely:

a. **Wells Fargo x8863**: approximately $79,109,828.17 seized from Wells Fargo Securities LLC account number 1BD68863, held in the name of Capstone Limited;

b. **Wells Fargo x7500:** approximately $1,861,106.49 seized from Wells Fargo Bank account number 9852677500, held in the name of Capstone Limited;

c. **Chase x6970:** approximately $2,056,207.08 seized from JPMorgan Chase Bank account number 000000723026970, held in the name of Capstone Limited;

d. **Wallet 1**: approximately 1,122,483.28 USDT seized from virtual currency address TJCaXo9kCxmXXcD4yrELjvzPvAPjg2Tvhe; and

e. **Wallet 2**: approximately 54,578.45 USDT seized from virtual currency address TKKrYKhyaLRd6oVqjCAL31akjvDkwwMHf6.

K. The terms "Bailment," "Bailor," "Bailee," and "Custodian" mean, respectively, a delivery of specific, identified personal property by one person (the bailor) to another (the bailee/custodian) in trust for a particular purpose, under an express or implied agreement that the identical property (or its agreed equivalent) will be returned to the bailor or dealt with according to the bailor's directions when the purpose is accomplished, with no transfer of ownership to the bailee.

L. The term "Capstone" means Capstone Limited, and any of its officers, employees, agents, and anyone acting on its behalf. Kotaro Shimogori and Mary Jeanne Thompson are natural persons that documents from the relevant financial institutions reference as being owners and/or operators of Capstone.

M. The term "EQIBank" means EQIBank Limited as identified in Paragraphs First through Fourth of Capstone's Verified Claim, and any entity or person doing business as, affiliated with, or related to EQIBank, including any entity you contend is the bailor of any Defendant Assets.

N. The term "Treasury instrument" means any U.S. Treasury bill, note, bond, or other U.S. government security, and any money-market fund holding such securities, that was transferred to, held in, redeemed, liquidated, or reinvested through any account constituting or holding an item of Defendant Assets.

O. The term "outbound international transfer" means any wire, transfer, payment, or on-chain transmission sent from an account or wallet constituting or holding an item of Defendant Assets to a beneficiary, account, or wallet located outside the United States.

P. The term "Relevant Time Period" means January 1, 2024 through the date of your answers, unless a specific interrogatory states otherwise.

Q. The term "impersonation fraud victim funds" means any funds received into any account constituting or holding funds from a person induced to send them by a fraudster posing as a law enforcement representative, as described in the Complaint.

R. The term "Beneficial Owner" means an individual who has a level of control over, or entitlement to, the funds or assets in the account that, as a practical matter, enables the individual, directly or indirectly, to control, manage or direct the account.

S. A request for the "identity of" or that you "identify a person" constitutes a request to state:

a. The present name of such person, if known, or if not known, as complete a description of such person as possible.

b. The present address and telephone number, residential and business, of such person, if known, and if not known, the last known address and telephone number of such person and all available information as to his whereabouts.

T. A request for the "description of" or "identification of" what you describe as "a document",

constitutes a request for the following:

1. Its nature (e.g., contract, letter, tape recording, etc.).

2. Its title, if any.

3. A brief summary of its contents.

4. The date and place of its preparation.

5. The identity of all people signing, preparing, or making it, or participating in or present at its preparation, making or signing.

6. The identity of the person having custody of the document and its present location, if known, and if unknown, its last known location and any available information as to its whereabouts.

**SPECIAL INTERROGATORY NO. 1:**

For each Defendant Asset, state the nature of Capstone's claimed interest, the amount or portion to which that interest applies, and whether Capstone asserts that interest in its own right or on behalf of EQIBank Limited, one or more EQIBank customers, or another person. If Capstone asserts any interest belonging to another person, identify that person and state the basis upon which Capstone contends it may assert that person's interest.

ANSWER:

**SPECIAL INTERROGATORY NO. 2:**

State all facts upon which Capstone contends that its relationship to each Defendant Asset satisfies the elements of a bailment, including facts establishing:

(a) the identity of the Bailor;

(b) the Bailor's ownership, possession, or possessory interest in the property;

(c) delivery of the property into Capstone's possession;

(d) Capstone's acceptance of possession as bailee;

(e) the purpose for which Capstone was permitted to possess the property; and

(f) Capstone's obligation concerning return or disposition of the property.

ANSWER:

**SPECIAL INTERROGATORY NO. 3:**

For each Defendant Asset for which Capstone claims an interest as Bailee, identify each person or entity Capstone contends was a Bailor and state the exact amount or portion of each Defendant Asset attributable to each Bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 4:**

For each Defendant Asset, identify each Beneficial Owner, state the exact amount or portion attributable to each Beneficial Owner, and state whether each Beneficial Owner is the same person or entity Capstone identifies as a Bailor. If not, state the relationship between them and the basis upon which Capstone contends the Bailor had authority to place the Beneficial Owner's property into bailment with Capstone.

ANSWER:

**SPECIAL INTERROGATORY NO. 5:**

For each EQIBank customer Capstone contends was covered by the alleged bailment, identify the property attributable to that customer, state the amount or value involved, and identify the Capstone account, wallet, or other location in which that property was held.

ANSWER:

**SPECIAL INTERROGATORY NO. 6:**

Capstone's Verified Claim states that it was bailee for "EQIBank Limited and its customers." State whether the alleged bailment was a single arrangement covering all EQIBank customers and all property received by Capstone in connection with EQIBank, or whether separate bailments existed for particular customers, accounts, assets, or transactions; and, for each alleged bailment, identify the parties, date it began, property covered, and Capstone accounts or wallets used to hold that property.

ANSWER:

**SPECIAL INTERROGATORY NO. 7:**

State whether any written agreement designates EQIBank Limited as "bailor" or Capstone as "bailee" as to any of the Defendant Assets, and if so, quote verbatim the language relied upon and identify the agreement, section, and date.

ANSWER:

**SPECIAL INTERROGATORY NO. 8:**

Identify each written or oral agreement Capstone contends created, governed, modified, or evidenced an alleged bailment and, for each, state the parties, date, signatories, property covered, duration, governing law, and consideration; and state whether the agreement expressly uses the terms "bailment," "bailor," "bailee," or "custodian," identifying the specific language relied upon.

ANSWER:

**SPECIAL INTERROGATORY NO. 9:**

For each EQIBank customer Capstone contends was covered by the alleged bailment, state whether the customer entered into any agreement with Capstone or authorized EQIBank to create or administer a bailment on the customer's behalf, and identify each agreement, authorization, instruction, or other record upon which Capstone relies to establish that customer's participation in or rights under the alleged bailment.

ANSWER:

**SPECIAL INTERROGATORY NO. 10:**

For each Defendant Asset, describe how the property was first delivered to Capstone, including:

(a) the date of delivery;

(b) the amount or property delivered;

(c) the person or entity from whom Capstone received the property;

(d) the account, wallet, custodian, broker, or financial institution from which the property was transferred;

(e) the Capstone account or wallet into which it was received; and

(f) the identity of the person or entity that directed the transfer.

ANSWER:

**SPECIAL INTERROGATORY NO. 11:**

For each Defendant Asset for which Capstone contends EQIBank was a Bailor, state whether EQIBank ever owned, possessed, received, held, controlled, or had the right to immediate possession of the property before Capstone received it; identify any account, wallet, securities account, or custodial arrangement through which EQIBank held or controlled the property; and, if EQIBank never held or controlled the property, state how Capstone contends EQIBank delivered that property into bailment.

ANSWER:

**SPECIAL INTERROGATORY NO. 12:**

For each Defendant Asset that Capstone received directly from a person or entity other than EQIBank, identify that person or entity and state the basis upon which Capstone contends EQIBank, rather than the transferor or Beneficial Owner, was the Bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 13:**

For each EQIBank customer Capstone contends was covered by the alleged bailment, state whether Capstone knew the customer's identity when Capstone first received that customer's property and identify the information Capstone received identifying the customer and the property attributable to that customer. If Capstone contends an unidentified or undisclosed customer was nevertheless covered by the bailment, state how Capstone accepted property in bailment for that customer and how Capstone determined whose property it was holding.

ANSWER:

**SPECIAL INTERROGATORY NO. 14:**

State whether EQIBank had the right or ability to direct, withdraw, or dispose of the funds held through Capstone, and identify all instructions EQIBank gave Capstone concerning the Defendant Assets or the funds comprising them.

ANSWER:

**SPECIAL INTERROGATORY NO. 15:**

State what Capstone means by its allegation in the Verified Claim that it "was the custodian" of the Defendant Assets and, for each Defendant Asset, identify separately the person for whom Capstone acted as custodian, the Bailor, and the Beneficial Owner.

ANSWER:

**SPECIAL INTERROGATORY NO. 16:**

State whether Capstone contends its asserted status as "custodian" and "bailee" describe the same relationship; if not, describe the distinction and state which status forms the basis for Capstone's claimed interest in each Defendant Asset. If Capstone contends EQIBank itself acted as custodian before Capstone received any property, identify the property EQIBank possessed or controlled in that capacity and how custody passed to Capstone.

ANSWER:

**SPECIAL INTERROGATORY NO. 17:**

For each alleged bailment, state Capstone's obligation with respect to property received, including whether Capstone was required to return the identical property, return equivalent property or value, maintain the property until further instruction, or transfer or dispose of the property as instructed; and state whether Capstone was authorized to commingle, invest, sell, redeem, reinvest, exchange, convert, transmit, or otherwise dispose of the property.

ANSWER:

**SPECIAL INTERROGATORY NO. 18:**

For each alleged bailment, state whether property was transferred to third-party beneficiaries rather than returned to the purported Bailor and, if so, identify the source of Capstone's authority to make those transfers and state how those transfers were performed pursuant to the alleged bailment.

ANSWER:

**SPECIAL INTERROGATORY NO. 19:**

State whether property held pursuant to any alleged bailment was commingled with property belonging to Capstone, EQIBank, customers of EQIBank, or other persons or entities and, if so, describe how Capstone identified and accounted for each Bailor's and Beneficial Owner's property after commingling, conversion, sale, redemption, reinvestment, or transfer.

ANSWER:

**SPECIAL INTERROGATORY NO. 20:**

For each claimed bailment, state whether Capstone was permitted to commingle property held in bailment with:

(a) property belonging to Capstone;

(b) property belonging to EQIBank; or

(c) property belonging to other EQIBank customers,

and, if so, state how Capstone contends the interest of each Bailor remained identifiable after commingling.

ANSWER:

**SPECIAL INTERROGATORY NO. 21:**

Describe how instructions concerning property held under each alleged bailment were transmitted to Capstone, including whether the instructions originated with an EQIBank customer and were transmitted or relayed through EQIBank, an API, portal, messaging system, or other electronic interface; and identify who originated, approved, transmitted, and executed the instructions.

ANSWER:

**SPECIAL INTERROGATORY NO. 22:**

State whether EQIBank had authority, independent of instructions from its customers, to direct Capstone to sell, transfer, invest, liquidate, exchange, withdraw, or otherwise dispose of customer property; if so, identify the source and scope of that authority, and if not, state the basis upon which Capstone contends EQIBank exercised sufficient dominion or control over that property to act as Bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 23:**

For each Defendant Asset, identify the books, ledgers, subaccounts, transaction records, or other records upon which Capstone relies to determine the amount attributable to each Bailor and Beneficial Owner, state the amount presently attributable to each, and state whether Capstone can trace the Defendant Asset to property received from that Bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 24:**

Describe how Capstone accounted for property that was held in a Capstone bank, brokerage, or cryptocurrency account or wallet but reflected as a credit on the books of EQIBank or in an EQIBank customer account.

ANSWER:

**SPECIAL INTERROGATORY NO. 25:**

Describe how property held in a Capstone bank, brokerage, or cryptocurrency account or wallet was reflected on EQIBank's books or in an EQIBank customer account, including whether the corresponding entry represented ownership of specific property held by Capstone, a deposit balance, a right to receive equivalent property or value, a debt or liability owed by EQIBank, or another interest.

ANSWER:

**SPECIAL INTERROGATORY NO. 26:**

For each transfer identified in response to the directly preceding Interrogatory, state whether the property passed through an account, wallet, or securities account maintained by EQIBank before Capstone received it.

ANSWER:

**SPECIAL INTERROGATORY NO. 27:**

If Capstone contends EQIBank was a Bailor of property that never passed through an account or wallet maintained by EQIBank, state all facts supporting Capstone's contention that EQIBank nevertheless possessed or had a possessory interest in that property sufficient to place it into bailment with Capstone.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 28:**

State when Capstone first contends a bailment relationship arose between Capstone and EQIBank, identify the property that was the subject of the first such bailment, and describe how that property was delivered by or on behalf of EQIBank to Capstone.

ANSWER:

**SPECIAL INTERROGATORY NO. 29:**

State whether EQIBank had authority to create a bailment between Capstone and an EQIBank customer without the customer entering into a separate agreement with Capstone; and, if so, identify the source and scope of that authority.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 30:**

State the complete factual and legal basis for designating EQIBank Limited the “Bailor” of each Defendant Asset, given that Capstone received those funds from third parties and transmitted them to other third parties. Identify every document and communication supporting that designation.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 31:**

For each Defendant Asset, state whether Capstone maintained a separate ledger or subaccount identifying the property attributable to EQIBank and to each EQIBank customer, and identify each such ledger or subaccount.

ANSWER:

**SPECIAL INTERROGATORY NO. 32:**

State whether Capstone disclosed to Wells Fargo and/or JP Morgan Chase that it held money, securities, or other property as bailee or custodian for EQIBank or any EQIBank customer, or that EQIBank or any EQIBank customer owned or beneficially owned property held in Capstone’s accounts; identify each such disclosure and, if no such disclosure was made, state why the alleged bailment or custodial relationship was not disclosed.

ANSWER:

**SPECIAL INTERROGATORY NO. 33:**

State whether Capstone disclosed to Wells Fargo and/or JP Morgan Chase the identity of EQIBank or any EQIBank customer as an owner, beneficial owner, source of funds, or person for whom Capstone received, held, invested, or transmitted property, and identify each such disclosure.

ANSWER:

**SPECIAL INTERROGATORY NO. 34:**

Describe how Capstone characterized its business and its anticipated use of the Wells Fargo and JP Morgan Chase accounts containing Defendant Assets when opening and maintaining those accounts, including whether Capstone represented that incoming funds or securities constituted payment for information-technology, software, consulting, vendor sales, or other services or constituted Capstone's own capital.

ANSWER:

**SPECIAL INTERROGATORY NO. 35:**

For each Defendant Asset, state the amount Capstone contends constituted Capstone's own money or property, including payment for information-technology, software, consulting, vendor sales, or other services, and the amount Capstone contends constituted property held in bailment for EQIBank or its customers; and identify the records supporting that allocation.

ANSWER:

**SPECIAL INTERROGATORY NO. 36:**

State whether Capstone stands by its January 30, 2026 representations to Wells Fargo that approximately $100 million in Treasury and liquidity instruments represented Capstone's own capital and that Capstone did not accept or hold customer funds for transmission, execute payments on behalf of clients, or maintain custodial, escrow, trust, or clearing accounts; for each statement Capstone no longer contends was accurate, state Capstone's present position and reconcile that position with its Verified Claim.

ANSWER:

**SPECIAL INTERROGATORY NO. 37:**

State when and why United States Treasury securities first became part of the relationship between Capstone and EQIBank, identify each person who proposed or approved their use, and state whether Capstone contends the Treasury securities were subject to the same alleged bailment as fiat currency or to a separate bailment or other arrangement.

ANSWER:

**SPECIAL INTERROGATORY NO. 38:**

For each United States Treasury security that Capstone contends formed part of or is traceable to a Defendant Asset, identify:

(a) the security;

(b) its Beneficial Owner;

(c) its custodian immediately before transfer to Capstone;

(d) the person who instructed that custodian to transfer the security;

(e) whether EQIBank ever possessed or held the security before Capstone; and

(f) the Capstone account into which the security was transferred.

ANSWER:

**SPECIAL INTERROGATORY NO. 39:**

Identify each representation Capstone made to Wells Fargo, JP Morgan Chase, Citibank, or another financial institution describing Treasury securities received into Capstone accounts as vendor-sale receipts, Capstone revenue, Capstone capital, or otherwise belonging to Capstone, and state whether Capstone now contends any such security was instead property held in bailment for EQIBank or its customers.

ANSWER:

**SPECIAL INTERROGATORY NO. 40:**

For each Defendant cryptocurrency asset, identify each Bailor and Beneficial Owner, the amount attributable to each, the source account or wallet, the person who directed the transfer or acquisition, and the basis upon which Capstone contends the cryptocurrency was held in bailment; and state whether any such cryptocurrency was acquired by Capstone using fiat or cryptocurrency already held by Capstone rather than transferred to Capstone by a purported Bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 41:**

State whether any USDT held Wallets 1 and/or 2 was acquired by Capstone through Blockfills or another exchange using funds already held by Capstone, rather than transferred to Capstone by EQIBank or an EQIBank customer, and, if so, describe how Capstone contends that subsequently acquired USDT became property held in bailment.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 42:**

Describe Blockfills' role in transactions involving property Capstone contends it held for EQIBank or its customers, including whether Capstone used Blockfills to receive, acquire, sell, convert, or transmit fiat or cryptocurrency; and, for any property traceable to a Defendant Asset that passed through or was acquired through Blockfills, identify the Bailor, Beneficial Owner, source property, and resulting property received by Capstone.

ANSWER:

**SPECIAL INTERROGATORY NO. 43:**

Identify all fees, commissions, spreads, markups, or other compensation Capstone received or was entitled to receive in connection with the alleged bailment or the property comprising a Defendant Asset, including the payer, date, basis for the compensation, and whether the compensation was deducted from or paid with property Capstone contends was held in bailment.

ANSWER:

**SPECIAL INTERROGATORY NO. 44:**

For each Defendant Asset, state the specific injury Capstone contends it suffers from forfeiture of that asset and whether Capstone would remain legally obligated to pay, return, reimburse, or otherwise account to EQIBank or any EQIBank customer if the asset is forfeited; if so, identify the person to whom the obligation is owed, the amount, and the agreement or other source of the obligation.

ANSWER:

**SPECIAL INTERROGATORY NO. 45:**

Identify Capstone with particularity, including its full legal name, entity type, state and date of formation, all former or alternate names and any names under which it does business, every state or country in which it is or has been registered or licensed to do business, its principal place of business, and the identity of every officer, director, member, manager, and person holding any ownership or controlling interest in Capstone during the Relevant Time Period, stating each such person's percentage of ownership or nature of control.

ANSWER:

**SPECIAL INTERROGATORY NO. 46:**

Identify Capstone's Chief Executive Officer, President, and Chief Operating Officer of record during the Relevant Time Period and as of the date of these answers; state each such person's current status, role, and whereabouts; and state why none of them verified the Verified Claim filed October 5, 2026

**ANSWER:**

**SPECIAL INTERROGATORY NO. 47:**

State the basis for Peter L. Platt's personal knowledge of the allegations in Capstone's Verified Claim concerning the Defendant Assets and alleged bailments, including the date his employment or affiliation with Capstone began, his title and duties, and the persons and records upon which he relied in verifying the Claim.

ANSWER:

**SPECIAL INTERROGATORY NO. 48:**

Identify Capstone's money transmitter and money services business licensing and registration status during the Relevant Time Period, including its FinCEN MSB registration(s), every state money-transmitter license it held or applied for, and its anti-money-laundering ("AML") and Bank Secrecy Act ("BSA") compliance program, insofar as that status bears Capstone holding the Defendant Assets and other property for itself or for others, and identify the persons responsible for that program.

ANSWER:

**SPECIAL INTERROGATORY NO. 49:**

State whether Capstone treated the Defendant Assets, or any funds it received, as funds held or transmitted on behalf of others for purposes of its Bank Secrecy Act and Anti Money Laundering obligations.

ANSWER:

**SPECIAL INTERROGATORY NO. 50:**

Explain how routing the Defendant Assets to foreign beneficiaries and third parties is consistent with a bailee's duty to return or redeliver the property to the bailor (EQIBank Limited); and if the property was held in bailment for EQIBank, state why it was transmitted abroad to third parties rather than returned to the bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 51:**

Identify and describe any policy, instruction, or practice of Capstone to send only, or primarily, outbound international wires, including who created or approved it, when, and the business reason for it.

ANSWER:

**SPECIAL INTERROGATORY NO. 52:**

State whether that policy, instruction, or practice was part of, required by, or connected to the claimed bailment arrangement with EQIBank Limited, and identify and produce all documents and communications (including internal chats and messages) reflecting or discussing the policy.

ANSWER:

**SPECIAL INTERROGATORY NO. 53:**

State whether EQIBank's depositors were informed that their funds were or would be held by Capstone or in accounts in the United States, and identify the documents so informing them.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 54:**

Identify "Victory Conquest" and its relationship to Capstone, to EQIBank Limited, and to the Defendant Assets, and state whether any funds or cryptocurrency constituting the Defendant Assets were received from, held for, or transmitted to Victory Conquest, stating the amounts and dates, whether Victory Conquest was related to the Bailor-Bailee relationship between Capstone and EQIBank Limited, and, if so, how it was related to that relationship.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 55:**

State to whom Capstone provided beneficial-ownership and know-your-customer ("KYC") information in connection with each such account, and what Capstone disclosed about the true source and ownership of the funds, including whether Capstone disclosed that it received and held funds on behalf of EQIBank Limited or any customer.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 56:**

Identify any of the Defendant Assets or portions of Defendant Assets that were payment to Capstone for services rendered and, if so,  to Capstone and property held by Capstone in bailment for EQIBank Limited and its customers, and reconcile Capstone's representations that the incoming funds were payment for services rendered with its contention in the Verified Claim that those funds were held in bailment.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 57:**

For each of Wells Fargo x8863, Wells Fargo x7500, and Chase x6970, please identify the owner of the account, when the account was opened, the Capstone owners, officers, directors, and employees who participated in opening the account, how it was opened, and where it was opened if opened in person.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 58:**

For each of Wallet 1 and Wallet 2, please identify the owner of the wallet, when the ownership began, when the wallet was created, the Capstone owners, officers, directors, and employees who participated in creating the wallet, and how it was created.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 59:**

For Wells Fargo x7500, identify when Capstone acquired the $55,452.68, from whom it acquired the funds, what business activity or activities Capstone engaged in to acquire the funds, and what written invoices, agreements, or other documents exist to document the activities Capstone engaged in to acquire the funds.

ANSWER**:**

**SPECIAL INTERROGATORY NO. 60:**

For Wallet 2, identify when Capstone acquired the 54,578.45 USDT, from whom it acquired the USDT, what business activity or activities Capstone engaged in to acquire the USDT, and what written invoices, agreements, or other documents exist to document the activities Capstone engaged in to acquire the USDT.

ANSWER**:**

Sign the attached declaration and return with your responses to the Special Interrogatories.

Dated: 10/17/2025

ERIC GRANT
United States Attorney

/s/ Kevin C. Khasigian
NICHOLAS M. FOGG
KEVIN C. KHASIGIAN
Assistant U.S. Attorney

**DECLARATION OF PURPORTED-CLAIMANT
TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES**

Under penalty of perjury, I hereby certify that the answers to the above Special Interrogatories are true, correct and complete.

Executed at ______________________________________ (Location where signed) on ______________________, 2026.

_________________________________
_____________

**CERTIFICATE OF SERVICE BY CERTIFIED MAIL**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers. That on October 17, 2026, he served a copy of the

UNITED STATES' FIRST SET OF RULE G(6) SPECIAL INTERROGATORIES TO CLAIMANT CAPSTONE LIMITED

(1) Through electronic mail to Capstone Limited's counsel of record, Brian Klein and John Bostic (bklein@cooley.com and jbostic@cooley.com)
(2) Through ECF filing in 2:26-CV-02476-DAD-CKD.

Address(es):
Capstone Limited

/s/ Kevin C. Khasigian