COOLEY LLP
BRIAN KLEIN (258486)
(bklein@cooley.com)
VIVIANA ANDAZOLA MARQUEZ (354307)
(vandazolamarquez@cooley.com)
350 South Grand Avenue, Suite 3200
Los Angeles, California 90071
Telephone: +1 213 561 3250
Facsimile: +1 213 561 3244

JOHN BOSTIC (264367)
(jbostic@cooley.com)
3175 Hanover Street
Palo Alto, California 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400

Attorneys for Claimant Capstone Limited

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY $79,109,828.17 SEIZED FROM WELLS FARGO SECURITIES LLC ACCOUNT NO. 1BD68863, HELD IN THE NAME OF CAPSTONE LIMITED,

APPROXIMATELY $1,861,106.49 SEIZED FROM WELLS FARGO BANK ACCOUNT NO. 9852677500, HELD IN THE NAME OF CAPSTONE LIMITED,

APPROXIMATELY $2,056,207.08 SEIZED FROM JPMORGAN CHASE BANK ACCOUNT NO. 000000723026970, HELD IN THE NAME OF CAPSTONE LIMITED,

APPROXIMATELY 1,122,483.28 USDT FROM VIRTUAL CURRENCY ADDRESS TJCaXo9kCxmXXcD4yrELjvzPvAPjg2Tvhe, AND

APPROXIMATELY 54,578.45 USDT FROM VIRTUAL CURRENCY ADDRESS TKKrYKhyaLRd6oVqjCAL31akjvDkwwMHf6,

Defendants.

Case No. 2:26-cv-02476-DAD-CKD

**CLAIMANT CAPSTONE LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS UNITED STATES' AMENDED COMPLAINT FOR FORFEITURE *IN REM*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge: Hon. Dale A. Drozd
Hearing Date: December 7, 2026
Time: 1:30 p.m.
Location: Courtroom 4

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, December 7, 2026 at 1:30 p.m., or as soon after as this matter may be heard, in Courtroom 4 of this Court, located at 501 I Street, Sacramento, California 95814, before the Honorable Dale A. Drozd, claimant Capstone Limited will and does move, pursuant to Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the government's Amended Complaint for Forfeiture *In Rem* with prejudice.

This Motion is made on the grounds that the Amended Complaint fails to state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial pursuant to Rule 12(b)(6), because it fails to establish the requisite nexus between each specifically identified defendant asset and the alleged predicate offenses.

Pursuant to this Court's standing order, counsel for Capstone Limited met and conferred with counsel for the government on November 2, 2026 regarding this Motion and its arguments. The parties were unable to reach an agreement resolving the issues discussed, and Capstone therefore brings this Motion.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such further argument and evidence as may be presented at or before the hearing on this Motion.

Dated: November 2, 2026

Respectfully submitted,

COOLEY LLP

By: */s/ Brian Klein*
Brian Klein

Attorneys for Capstone Limited

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 8

A. The First Claim, Covering the Wells Fargo Accounts, Fails to Adequately Plead the Predicate Offenses and Proceeds Nexus. ..... 8

1. The Only Basis for Forfeitability of Wells Fargo x8863 Is Fatally Defective and Must Be Dismissed. ..... 8

2. The False Statements and Bank Fraud Theories as to Wells Fargo x7500 Similarly Fail. ..... 12

B. The Second Claim Fails to Adequately Connect the Seized Chase Balance to the Alleged Wire-Fraud Proceeds. ..... 15

C. The Third Claim Fails to Allege Sufficient Facts to Conclude Capstone Was Operating as an Unlicensed Money-Transmitting Business. ..... 16

1. The Amended Complaint Does Not Plead the Requisite Knowledge and a Sufficient Connection Between the Alleged Crime and the Seized Assets. ..... 17

2. The Amended Complaint Fails to Plead a Viable State-Licensing Theory. ..... 19

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 19

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) .......... 17

*Thompson v. United States*,
604 U.S. 408 (2025) .......... 10

*United States v. $191,910.00 in U.S. Currency*,
16 F.3d 1051 (9th Cir. 1994) .......... 7, 8

*United States v. $215,587.22 in U.S. Currency Seized from Bank Acct. No. 100606401387436*,
306 F. Supp. 3d 213 (D.D.C. 2018) .......... 7

*United States v. 674,739.480211 USDT of Tether cryptocurrency*, 2026 WL 592743 (N.D.N.Y. Mar. 3, 2026) .......... 18

*United States v. Aguilar*,
782 F.3d 1101 (9th Cir. 2015) .......... 6, 7, 15

*United States v. Ali*,
266 F.3d 1242 (9th Cir. 2001) .......... 9

*United States v. Bellucci*,
995 F.2d 157 (9th Cir. 1993) .......... 13

*United States v. Bennett*,
621 F.3d 1131 (9th Cir. 2010) .......... 10

*United States v. Elfgeeh*,
515 F.3d 100 (2d Cir. 2008) .......... 17

*United States v. Marolf*,
173 F.3d 1213 (9th Cir. 1999) .......... 7, 8

*United States v. Real Prop. 22249 Dolorosa St.*,
190 F.3d 977 (9th Cir. 1999) .......... 7

*United States v. Real Prop. 874 Gartel Dr.*,
79 F.3d 918 (9th Cir. 1996)........................................................................................ 8

*United States v. Real Prop. at 17 Coon Creek Rd.*,
787 F.3d 968 (9th Cir. 2015)........................................................................................ 6

*United States v. Real Prop. at 2659 Roundhill Dr.*,
194 F.3d 1020 (9th Cir. 1999)...................................................................................... 6

*United States v. Talebnejad*,
460 F.3d 563 (4th Cir. 2006)...................................................................................... 17

*United States v. Thompson*,
990 F.3d 680 (9th Cir. 2021)................................................................................. 12, 15

*United States v. Two Condos. Located at 465 Ocean Drive, Units 315 & 316, Miami Beach, Fla. 33139*,
2021 WL 3810273 (N.D. Cal. Aug. 26, 2021)............................................................. 7, 15

*United States v. Yates*,
16 F.4th 256 (9th Cir. 2021)...................................................................................... 11

**Statutes, Regulations, and Rules**

18 U.S.C.§ 20 .............................................................................................................. 9

18 U.S.C. § 981 ................................................................................................ 7, 15, 17

18 U.S.C. § 983 ...................................................................................................... 7, 18

18 U.S.C. § 1014 ................................................................................................ 8, 9, 13

18 U.S.C. § 1343 .......................................................................................................... 15

18 U.S.C. § 1344 ...................................................................................................... 9, 11

18 U.S.C. § 1960 .................................................................................................... 16, 19

Cal. Fin. Code § 2001 ................................................................................................... 20

Cal. Fin. Code § 2003 ................................................................................................... 19

Cal. Fin. Code § 2030 ................................................................................................... 19

Cal. Fin. Code § 2101 ................................................................................................... 20

Colo. Rev. Stat. § 11-110-201........................................................................................ 21

Fla. Stat. § 560.103 ....................................................................................................... 21

Mo. Rev. Stat. § 361.906 ............................................................................................... 21

N.Y. Banking Law § 641 .......... 21

Nev. Rev. Stat. § 671.013 .......... 21

Ohio Rev. Code Ann. § 1315.02 .......... 21

31 C.F.R. § 1010.100 .......... 21

Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions G .......... 6, 7, 18

**Other Authorities**

Jane M. Azia, Director of Non-Depository Institutions and Consumer Protection, *Industry Letter: Money Transmitters with No Physical Presence in New York*, N.Y. Dep't of Fin. Servs. (Mar. 31, 2011) .......... 21

*Capstone Products*, Capstone-online.com .......... 3

*Industry and Specialized Coverage*, Wells Fargo .......... 9, 10

Ninth Circuit Model Criminal Jury Instruction 15.36 .......... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The government does not have a viable civil asset forfeiture case, and it should never have seized the properties in this action.[1] Capstone Limited, a FinCEN-registered business and financial-technology software developer based in the United States, is the lawful owner and bailee of the five seized properties that are the subject of the government's Amended Complaint for Forfeiture *In Rem*. Nowhere in the Amended Complaint does the government allege specific facts showing how any of the seized funds are the proceeds of unlawful activity. Indeed, although the Amended Complaint is the government's second attempt to plead a case, it fails again to adequately allege predicate offenses or connect the seized funds to those offenses.

The impact of the government's improper forfeiture has been severe. The government wrongfully seized Capstone's accounts and cryptocurrency wallets and retained the funds for months without initiating a civil or criminal proceeding, causing serious disruption to Capstone's business and unfair reputational damage that continues to this day. The government then filed this public forfeiture action only after EQIBank Limited, a Capstone customer and regulated bank, moved under seal for return of seized property under Federal Rule of Criminal Procedure 41(g). Yet the government's decision to pursue forfeiture does not relieve it of its obligation to plead facts establishing that the specific seized property is actually forfeitable—a standard the Amended Complaint still fails to come even close to satisfying.

The government's only claim to the approximately $79.1 million seized from the Wells Fargo Securities brokerage account, representing approximately 95% of the seized assets, rests on the first claim in the Amended Complaint. The first claim targets two Wells Fargo accounts (one securities brokerage account and the other a bank account), alleging that the seized assets constitute or derive from proceeds of bank fraud and false statements to a financial institution under 18 U.S.C. § 981(a)(1)(C). That theory fails for multiple, independent reasons. As to the securities account, the Amended Complaint conflates "Wells Fargo Securities LLC" with "Wells Fargo N.A." without

---

[1] For purposes of this motion alone, Capstone is required to accept the Amended Complaint's allegations as true. Capstone does, in fact, dispute the allegations—including that it engaged in any criminal conduct—and reserves all rights.

adequately connecting the alleged misconduct to a covered financial institution, which could only be the latter (*i.e.,* a federally insured bank). The Amended Complaint also fails to explain why Capstone's alleged description of its business as "Information Technology and Fintech" was false, rather than merely incomplete. As to the bank account, the Amended Complaint fails to adequately attribute the allegedly false money-transmission response in a bank-prepared form to Capstone. And for both the securities and bank accounts, the Amended Complaint fails to identify qualifying money or property that Capstone sought to obtain through the alleged deception and explain how allegedly false statements transformed legitimate customer-owned assets into fraud proceeds.

The rest of the Amended Complaint fares no better. The second claim, which covers a Chase bank account, fails to connect the entire seized balance to wire fraud: although the Amended Complaint identifies purported victim deposits and alleges that the seized balance included victim payments, it also identifies a $500,000 transfer from Wells Fargo without explaining how that deposit was derived from the impersonation-fraud scheme. As to the third claim, which includes the Chase account, the two cryptocurrency wallets, and the Wells Fargo bank account, the Amended Complaint fails to allege facts showing that Capstone's activities required state money-transmitter licenses, that Capstone knew the business was unlicensed, or that the balances actually seized were substantially connected to the alleged licensing violations.

Across all three claims, the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions require sufficiently detailed facts supporting forfeiture of each specifically identified asset. The government cannot, and does not, satisfy that burden merely by alleging misconduct involving an account and treating the balance remaining at seizure as forfeitable. The Amended Complaint must establish the required connection between the alleged offense and the property the government seeks to keep, but it fails do so.

The Amended Complaint should be dismissed with prejudice.

## II. BACKGROUND

As alleged in the Amended Complaint, Capstone Limited is a U.S.-based business incorporated in the State of Montana. (Dkt. 28 Am. Compl. ("AC") ¶ 10.) Capstone is registered as a money service business with the Financial Crimes Enforcement Network ("FinCEN"), the federal

government entity responsible for administering provisions of the Bank Secrecy Act. (*Id.* ¶ 11.) Since its inception, Capstone has developed financial technology-related software applications.[2] Capstone's customers include an offshore bank described as "Dominica Bank 1" and a foreign stablecoin issuer described as "Cryptocurrency Company 1," which is affiliated with what is described as "Cryptocurrency Exchange 1." (*Id.* ¶¶ 14, 16.) Capstone allegedly received U.S. Treasury securities belonging to these customers into the Wells Fargo Securities account, sold or allowed those securities to mature, and transferred the resulting dollar proceeds to the Wells Fargo checking account for disbursement at its customers' direction. (*Id.* ¶¶ 5(a), 79-85.) The Amended Complaint does *not* allege that this underlying customer relationship itself was unlawful.

Separately, the Amended Complaint alleges an impersonation-fraud scheme under which money allegedly flowed into Capstone's Chase account. According to those allegations, unidentified fraudsters posed as credit-card company representatives and law-enforcement officials and convinced victims that they needed to transfer money to avoid arrest or the freezing of assets. (*Id.* ¶¶ 49-52.) The Amended Complaint references individual purported victims, dates, and dollar amounts, and alleges that each victim's deposit into the Chase account was followed, generally within a day, by a transfer of a nearly identical amount of USDT—less fees—from one of the two cryptocurrency wallets to a wallet controlled by a foreign counterparty. (*Id.* ¶¶ 52, 55, 60-64.)[3] Critically, the Amended Complaint does *not* allege that Capstone perpetrated the fraud, had any contact with the fraudsters, or knew the deposits were fraud proceeds when it processed them. To the contrary, the Amended Complaint acknowledges that Capstone's Chief Operating Officer reported the matter to the Miami Beach Police Department for further investigation. (*Id.* ¶ 54.)

The Amended Complaint does not claim that any criminal charges were brought against the fraudsters, nor is Capstone aware of any such charges. Further, no civil or criminal action has been

---

[2] *See, e.g.*, *Capstone Products*, Capstone-online.com, https://perma.cc/5688-7ZM8.

[3] The Amended Complaint uses the past tense when describing victim funds in the Chase account, without specifying what time period the Amended Complaint refers to: "The seized balance of Chase x6970 *was* commingled but *included* payments from the impersonation fraud scheme victims *and* funds transferred from Wells Fargo x7500. (*See* AC ¶ 57.) The funds thus *reflected* both the impersonation fraud scheme and Capstone's money transmitting activities. Capstone used Chase x6970 in both." (*Id.* (emphasis added).)

brought against Capstone or any individual affiliated with it in connection with the circumstances referenced in the Amended Complaint. Yet the government moved to seize Capstone's accounts and cryptocurrency wallets. On March 6, 2026, Magistrate Judge Chi Soo Kim authorized seizure warrants for the two cryptocurrency wallets and the JPMorgan Chase account now at issue, citing 18 U.S.C. §§ 981(a)(1)(A) and (C) and 982(a)(1) as the forfeiture bases.[4] On June 1, 2026, Magistrate Judge Carolyn K. Delaney authorized two additional seizure warrants for the Wells Fargo Securities and Wells Fargo Bank accounts, citing 18 U.S.C. § 981(a)(1)(C).[5]

For months after the seizures, the government filed no civil forfeiture complaint and no criminal indictment to justify its continued retention of the property. It was only after a third party, and Capstone's bailor, EQIBank Limited ("EQIBank"), filed a motion seeking the return of seized funds that the government hastily filed this forfeiture action. EQIBank is alleged to be "an offshore bank registered in the Commonwealth of Dominica." (AC ¶ 14.)

The procedural history of the related litigation confirms this sequence of events. On June 29, 2026, EQIBank filed a motion in this District pursuant to Federal Rule of Criminal Procedure 41(g) seeking return of seized funds held in Capstone's accounts. (*See EQIBank Ltd. v. United States*, No. 2:26-mc-00208-DAD-CKD (E.D. Cal.) ("*EQIBank* Case"), Dkt. 1.) EQIBank argued that the government had no basis to retain the property because no civil forfeiture complaint or criminal indictment had been filed. (*Id.*)

Next, on July 13, 2026, the government filed an opposition to EQIBank's Rule 41(g) motion. (*EQIBank* Case, Dkt. 15.) The government's opposition did not contest any of EQIBank's factual allegations. Instead, the government's sole argument was that "[t]h[is] Court should decline

---

[4] Warrant to Seize Property Subject to Forfeiture, *In re Seizure of Virtual Currency Within, or Associated With, Virtual Currency Address TKKrYKhyaLRd6oVqjCAL31akjvDkwwMHf6*, No. 2:26-sw-0176 (E.D. Cal. Mar. 6, 2026); Warrant to Seize Property Subject to Forfeiture, *In re Seizure of Virtual Currency Within, or Associated With, Virtual Currency Address TJCaXo9kCxmXXcD4yrELjvzPvAPjg2Tvhe*, No. 2:26-sw-0177 (E.D. Cal. Mar. 6, 2026); Warrant to Seize Property Subject to Forfeiture, *In re Seizure of All funds maintained in JP Morgan Chase Bank N.A. Acct. No. 000000723026970*, No. 2:26-sw-0178 (E.D. Cal. Mar. 6, 2026).

[5] Warrant to Seize Property Subject to Forfeiture, *In re Seizure of All funds on deposit in Wells Fargo Sec. LLC acct. no. 1BD68863*, No. 2:26-sw-0463 (E.D. Cal. June 1, 2026); Warrant to Seize Property Subject to Forfeiture, *In re Seizure of All funds on deposit in Wells Fargo Bank N.A. acct. no. 9852677500*, No. 2:26-sw-0464 (E.D. Cal. June 1, 2026).

to assume equitable jurisdiction over [EQIBank's] Rule 41(g) motion once the United States files a civil forfeiture complaint against the seized funds," and it stated that it "anticipate[d] filing that complaint before the Thursday July 16, 2026 hearing." (*Id.* at 1.) Then, on July 14, 2026, EQIBank filed a reply memorandum, arguing that the government's "tack to moot [EQIBank's] Rule 41(g) motion via an anticipated civil forfeiture action is pure gamesmanship that evidences a callous disregard for the continued operations of a non-U.S. bank." (*EQIBank* Case, Dkt. 16 at 1.)

This is the backdrop for this pending civil asset forfeiture proceeding. On July 15, 2026, the government filed its original Complaint, which was the day after EQIBank filed its reply. (See Dkt. 1 (Compl.).) Then on October 5, 2026, Capstone filed a motion to dismiss (Dkt. 14), and rather than respond in light of the numerous fatal deficiencies pointed out in the motion to dismiss, on October 26, 2026, the government filed the Amended Complaint.

The Amended Complaint, like the original Complaint, seeks civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) of the same five defendant assets: (1) approximately $79,109,828.17 seized from the Wells Fargo Securities account; (2) approximately $1,861,106.49 seized from the Wells Fargo Bank account; (3) approximately $2,056,207.08 seized from the JPMorgan Chase account; (4) approximately 1,122,483.28 USDT from one virtual currency address; and (5) approximately 54,578.45 USDT from a second virtual currency address. Unlike the original Complaint, which pled a single aggregated claim against all five assets under four predicate offenses, the Amended Complaint now pleads three separate, asset-specific claims: a first claim under Section 981(a)(1)(C) against the two Wells Fargo accounts for bank fraud and false statements to a financial institution; a second claim under Section 981(a)(1)(C) against the Chase account for wire fraud; and a third claim under Section 981(a)(1)(A) against the Wells Fargo Bank account, the Chase account, and both cryptocurrency wallets for operating an unlicensed money transmitting business.

The Amended Complaint reflects numerous significant changes to the original Complaint. These include, for example, dropping the standalone forfeiture claim predicated on the money-laundering offenses in 18 U.S.C. §§ 1956 and 1957; removing the express allegation that Capstone knew it was transmitting fraud proceeds; leaving the Section 1960 claim grounded in alleged

failures to obtain state money-transmitter licenses; abandoning Section 1960 as a proceeds predicate; and excluding the approximately $79.1 million in Wells Fargo Securities assets from the Section 1960 forfeiture claim. (*See* Compl. ¶¶ 72-73, 75, 77.) The amended claims now seek forfeiture of the Wells Fargo assets as proceeds of bank fraud and false statements to a financial institution, the Chase assets as wire-fraud proceeds, and the cryptocurrency solely on an unlicensed-money-transmission theory. For the convenience of this Court, a redline comparing the original Complaint to the Amended Complaint is attached as Exhibit A.

## III. Legal Standard

To survive a motion to dismiss, a complaint seeking forfeiture *in rem* pursuant to 18 U.S.C. § 981, like in this case, must satisfy the pleading requirements set forth by the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R."). *See United States v. Real Prop. at 2659 Roundhill Dr.*, 194 F.3d 1020, 1024 n.3 (9th Cir. 1999); Supp. R. G(2)(a). A claimant with standing may challenge the sufficiency of the complaint pursuant to Rule 12(b), including on the basis of detailed-facts requirements set by Supplemental Rule G(2), after filing a verified claim stating their interest in the defendant property.[6] *See* Supp. R. G(8)(b).

Such complaints are governed by "a higher standard" than the usual "notice pleading" standard. *United States v. Aguilar*, 782 F.3d 1101, 1108-09 (9th Cir. 2015) (citation omitted). A claim must meet the typical requirement that it "contain sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). But the Supplemental Rules additionally require that a claim state "the circumstances giving rise to the forfeiture claim

[6] To confirm its standing, on October 5, 2026, Capstone filed its verified claim over all the seized funds. (Dkt. 15.) On October 16, 2026, EQIBank filed its own verified claim that is consistent with Capstone's verified claim. (Dkt. 17.) Capstone's "standing to contest forfeiture" at this stage of the proceedings is also confirmed by the Amended Complaint's allegations and presumably the affidavit(s) for the seizure of the funds. For these reasons, there is no dispute that Capstone has standing to file this Motion at this stage of the proceedings, so this Court should decide the Motion before the parties engage in any form of discovery. *See United States v. Real Prop. at 17 Coon Creek Rd.*, 787 F.3d 968, 977 (9th Cir. 2015) (agreeing that a claimant "need not have supplemented his claim with additional evidence" where "the government had admitted facts sufficient to establish the claimant's interest") (citation omitted).

with sufficient particularity that the claimant can commence a meaningful investigation of the facts and draft a responsive pleading and permit a reasonable belief for pleading purposes that the property in question is subject to forfeiture." *Aguilar*, 782 F.3d at 1108-09 (cleaned up); *see also* Supp. R. G(2)(f) (complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial").

To state a claim for forfeiture pursuant to Section 981, the government must establish a nexus between the defendant property and criminal conduct. For forfeiture pursuant to Section 981(a)(1)(C), the government must plead that the property "constitutes or is derived from proceeds traceable to" specified unlawful activity, whereas for forfeiture pursuant to Section 981(a)(1)(A), the government must plead that the property is "involved in" or "traceable to such property involved in" certain offenses. *See* 18 U.S.C. § 981(a). When asserting a theory based on tracing, the government must at least plausibly allege the "general contours . . . of the chain linking the property at issue back to unlawful conduct." *See United States v. Two Condos. Located at 465 Ocean Drive, Units 315 & 316, Miami Beach, Fla. 33139*, 2021 WL 3810273, at *3 (N.D. Cal. Aug. 26, 2021). Where the government instead proceeds under an "involved in" theory, it must plead facts sufficient to support a reasonable belief that it can demonstrate a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3); *see also United States v. $215,587.22 in U.S. Currency Seized from Bank Acct. No. 100606401387436*, 306 F. Supp. 3d 213, 221-22 (D.D.C. 2018). Under either theory, the government's obligation applies separately to *each defendant asset*. *See United States v. Real Prop. 22249 Dolorosa St.*, 190 F.3d 977, 982 (9th Cir. 1999) (holding that the government's obligation to establish forfeitability applies separately to each defendant asset).

Forfeiture statutes are strictly construed against the government, and courts are "reluctant to find that a statute allows forfeiture where a plausible interpretation of the statute would not allow it." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994), *superseded on other grounds as stated in United States v. $80,010 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). Courts are "particularly wary of civil forfeiture statutes, for they impose 'quasi-criminal' penalties without affording property owners all of the procedural protections afforded criminal defendants." *Id.*; *see also United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999)

(forfeitures "should be enforced only when within both letter and spirit of the law") (citation omitted).

## IV. ARGUMENT

This Court should dismiss the Amended Complaint because all three of its claims fail. The first claim fails because the Amended Complaint fails to plead the necessary elements to allege claims of bank fraud and false statements to a financial institution for both Wells Fargo accounts. The second claim does not connect the funds that are currently in the Chase account to the alleged wire-fraud conduct. And the third claim does not tie the currently seized funds to a licensing failure and fails to allege sufficient facts for this Court to conclude that Capstone was required to obtain state licenses for money transmission as a matter of law.

### A. The First Claim, Covering the Wells Fargo Accounts, Fails to Adequately Plead the Predicate Offenses and Proceeds Nexus.

The government's first claim for relief in the Amended Complaint, and the only basis stated for seizure of 95% of the assets at issue, seeks forfeiture under 18 U.S.C. § 981(a)(1)(C) on the theory that the assets seized from the Wells Fargo Securities account ("Wells Fargo x8863") and the Wells Fargo Bank account ("Wells Fargo x7500") are proceeds traceable to bank fraud (18 U.S.C. § 1344) and false statements to a financial institution (18 U.S.C. § 1014). (AC ¶¶ 90-91.) The Amended Complaint fails to plead a cognizable predicate offense in connection with the securities account and, independently, fails to adequately connect the defendant assets to proceeds of the alleged offenses within the meaning of Section 981.

#### 1. The Only Basis for Forfeitability of Wells Fargo x8863 Is Fatally Defective and Must Be Dismissed.

**Failure to Plead a Covered Financial Institution.** The government's predicate offenses both require offense conduct targeting a Federal Deposit Insurance Corporation ("FDIC")-insured bank. Section 1014 prohibits "knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action of" a federally insured financial institution. *See United States v. Real Prop. 874 Gartel Dr.*, 79 F.3d 918, 920 (9th Cir. 1996) ("It is illegal under section 1014 to knowingly make false statements to a federally insured institution for the purpose of influencing

the action of that institution.") (citing 18 U.S.C. § 1014).[7] Similarly, bank fraud pursuant to Section 1344 requires a scheme "to defraud a financial institution" or to "obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344.[8] In turn, 18 U.S.C. § 20(1) defines "financial institution" to include, as relevant here, "an insured depository institution."

The Amended Complaint conflates two distinct Wells Fargo entities and, in so doing, fails to plead this element as to the account containing the bulk of the seized assets. The caption identifies Wells Fargo x8863 as an account at *Wells Fargo Securities LLC*, but the pleading defines "Wells Fargo" as *Wells Fargo N.A.* and alleges only that the latter is FDIC-insured. (AC ¶¶ 2, 47.) The bank's insured status does not establish that the securities affiliate is a covered institution under Section 1014 or 1344, and the Amended Complaint alleges no independent basis for treating it as one. The two Wells Fargo entities referenced in the Amended Complaint are legally distinct entities, and publicly available information indicates that Wells Fargo Securities LLC is *not* FDIC insured.[9] The government's practice of using "Wells Fargo" throughout the Amended Complaint obscures this problem but does not solve it.

This flaw in the Amended Complaint is no minor technicality; it is a fundamental requirement of the government's chosen predicate offenses in the Ninth Circuit. "Proof of federally-insured status of the affected institution is, for both [S]ection 1344 and [S]ection 1014, a jurisdictional prerequisite as well as an element of the substantive crime." *United States v. Ali*, 266 F.3d 1242, 1243 (9th Cir. 2001) (quoting *United States v. Key*, 76 F.3d 350, 353 (11th Cir. 1996)). The Amended Complaint must therefore connect the alleged securities-account misconduct to a

---

[7] Section 1014 applies to false statements made to influence specific types of institutions listed in the statute including, as relevant here, "any institution the accounts of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 1014.

[8] For purposes of Section 1344, "financial institution" includes, as relevant here, "an insured depository institution." 18 U.S.C. § 20(1). The Amended Complaint alleges that Wells Fargo N.A., rather than Wells Fargo Securities LLC, is FDIC-insured. (AC ¶¶ 2, 47.)

[9] *See Industry and Specialized Coverage*, Wells Fargo, https://perma.cc/3CSD-DMN2 (indicating that Wells Fargo Bank, N.A. is a member of FDIC, listing no FDIC membership for Wells Fargo Securities, LLC, and stating that "Wells Fargo Securities, LLC and Wells Fargo Prime Services, LLC, are distinct entities from affiliated banks.").

covered institution; a shared trade name or corporate affiliation cannot substitute for that connection. *See United States v. Bennett*, 621 F.3d 1131, 1136-39 (9th Cir. 2010) (rejecting a bank-fraud theory based on funds obtained from an FDIC-insured bank's wholly owned subsidiary because "a parent corporation does not own the assets of its wholly-owned subsidiary by virtue of that relationship alone," and holding that the bank's ownership of the subsidiary did not suffice to establish the bank's "custody or control" of those funds). That reasoning applies with particular force here: Wells Fargo itself identifies Wells Fargo Securities LLC as a "distinct entit[y] from affiliated banks." *See supra* n.9. Yet the Amended Complaint supplies no facts establishing that Wells Fargo N.A. owned, held, or controlled the securities in the separate entity's account. Corporate affiliation cannot fill that factual gap. The Amended Complaint's allegations regarding Wells Fargo x8863 thus fail to allege a predicate offense supporting forfeiture of the funds in that account. (*See* AC ¶¶ 32, 33.)

Without facts connecting the securities-account allegations to a covered institution, the first claim fails to adequately plead the predicates for forfeiture of Wells Fargo x8863.

**Failure to Plead Falsity.** The Amended Complaint does not adequately allege why Capstone's description of its business as "Information Technology and Fintech" when opening Wells Fargo x8863 was false, rather than merely incomplete. It alleges that the description was false because Capstone engaged in money transmission. (AC ¶¶ 32-33.) But Section 1014 "does not criminalize statements that are misleading but true." *Thompson v. United States*, 604 U.S. 408, 418 (2025). Falsity must be assessed in context, and the description must convey an untrue proposition—not just omit additional information the bank would have wanted to know. *Id.* at 420. The Amended Complaint's own allegations describe Capstone's API-driven platform, technology stack, and operational support, acknowledging that its alleged money-transmitting (*i.e.,* "Fintech") activities were offered alongside technology services. (AC ¶¶ 37-38.)

The Amended Complaint does not identify any claim by Capstone in the Wells Fargo x8863 form that "Information Technology and Fintech" captured *all* of Capstone's activities, nor any denial by Capstone that these Fintech activities involved transmitting money. Nor does identifying a certain NAICS code, without more, establish that the selected classification was clearly false in

context. (*Id.* ¶ 33.) The government's view that Capstone should have disclosed additional activities does not, by itself, establish the actual falsity *Thompson* requires.[10] Accordingly, the false-statements predicate for Wells Fargo x8863 fails.

**Failure to Plead Deceptive Scheme to Obtain Qualifying Money or Property.** Even assuming the "Information Technology and Fintech" description was deceptive, the Amended Complaint does not adequately identify the money or property Capstone sought to obtain through that deception in connection with Wells Fargo x8863. The government alleges that Capstone sought to obtain "money and property," including "securities under [Wells Fargo's] control in Wells Fargo x8863." (AC ¶ 44.) But the Amended Complaint does not plead facts establishing that a covered financial institution owned, held, or controlled the securities that Capstone allegedly sought to obtain through the challenged description. Instead, the alleged transactions involved administering customer-owned securities through the account. (*Id.* ¶¶ 5(a), 79-85.) The pleading must explain how the alleged deception was directed at obtaining qualifying money or property, rather than merely obtaining access to the account through which Capstone administered securities. Where obtaining actual money or property is not an "object of the fraud," there is no violation of Section 1344, and a violation cannot be based merely on depriving the bank of "accurate information" regarding use of the account. Ninth Circuit Model Criminal Jury Instruction 15.36; *see also United States v. Yates*, 16 F.4th 256, 265 (9th Cir. 2021).

**Failure to Plead a Proceeds Nexus.** Even assuming the alleged statements establish the predicate offenses, the government must separately plead that the assets seized from Wells Fargo x8863 constitute or derive from proceeds of those offenses. Paragraph 91 of the Amended

---

[10] The alleged January 30, 2026 letter from Capstone to Wells Fargo does not cure that defect. (AC ¶ 43.) The Amended Complaint places the letter in the context of discussions about opening a commercial banking account, not the earlier opening of Wells Fargo x8863. (*Id.* ¶¶ 42-43.) Whatever independent significance the letter may have, its later, more categorical representations do not establish that the description "Information Technology and Fintech" was false when supplied to open x8863. Nor does the Amended Complaint identify a pending decision concerning continued access to x8863 that the letter allegedly sought to influence. It alleges that Wells Fargo questioned Capstone's money service business status during discussions about a proposed commercial banking account, but does not explain how the response was intended to induce action concerning the existing securities account. (*Id.*)

Complaint attempts to supply that nexus by alleging that Capstone acquired security entitlements and deposit claims through the accounts. But the pleading also describes the underlying securities as customer-owned and quotes an arrangement under which Capstone acquired no proprietary right in the custody assets. (AC ¶¶ 5(a), 84, 91.) In other words, the Amended Complaint's allegations are consistent with the reality that the bulk of seized funds remain customer funds and are not proceeds at all—much less proceeds of the alleged predicate offenses.

The government must therefore do more than identify Capstone's authority to direct transactions: it must explain why the rights allegedly procured through deception made the customer principal itself proceeds of the offenses, rather than property held and administered through the accounts. *Cf. United States v. Thompson*, 990 F.3d 680, 691-92 (9th Cir. 2021) (distinguishing proceeds acquired by a defendant from funds passing through trust or escrow accounts, notwithstanding temporary physical control). In sum, the Amended Complaint could establish a proceeds nexus only if Capstone's authority to direct transactions in customer-owned assets were equivalent to acquisition of the customer funds themselves through fraud. Merely identifying security entitlements and deposit claims, as the Amended Complaint does, does not explain how that principal became proceeds of the alleged offense.

For these reasons, the Amended Complaint must be dismissed as to Wells Fargo x8863.

**2. The False Statements and Bank Fraud Theories as to Wells Fargo x7500 Similarly Fail.**

The Amended Complaint's theory as to Wells Fargo x7500 is also fatally flawed.

**Failure to Plead a False Statement under Section 1014.** As to the false statements predicate offense for this account, the Amended Complaint alleges that a Wells Fargo banker completed the opening documents "based on information provided by" Kotaro Shimogori and his wife. (AC ¶ 27.) It identifies two distinct documents: a Business Account Application signed in his wife's name and a separate Enhanced Due Diligence ("EDD") Customer Activity Screening Form recording "No" in response to a money-transmission question. (*Id.* ¶¶ 28-29.) Although the EDD form was allegedly completed the same day, the Amended Complaint does not identify a contemporaneous exchange in which either individual supplied that answer, or allege that either

reviewed or adopted the entry. A signature on the separate application does not establish adoption of the EDD response. In *United States v. Bellucci*, 995 F.2d 157, 159 (9th Cir. 1993), the defendant's signature established that he "adopted the lie as his own and represented it as true." A signature or direct submission is not indispensable, but responsibility "in whole or in part" for the false information is. *Id.* A key missing link is whether the banker recorded Capstone's answer or supplied an internal classification from its general business description.

The bald assertion in paragraph 29 of the Amended Complaint that Shimogori and his wife knew the statements were false does not identify what either said concerning the EDD question. Section 1014 requires a knowingly false statement, not merely an inaccurate bank entry. *See* 18 U.S.C. § 1014; *Bellucci*, 995 F.2d at 159. The government must connect the alleged knowing falsehood to the challenged response; the banker's selection of "No" and same-day completion do not supply that missing exchange. Nor does the signed application's description of "Computer IT Services and Installation" itself establish a false denial of money transmission. (AC ¶ 28.)

**Failure to Plead Deceptive Scheme to Obtain Qualifying Money or Property.** The same attribution issue also infects the bank-fraud theory insofar as it rests on the EDD response: the relevant inquiry is whether Capstone knowingly supplied or caused the allegedly deceptive answer, rather than whether the banker recorded it. Separately, although Section 1344 reaches fraudulent representations, the allegation that Capstone transmitted money does not, without more, explain why describing its business as "Computer IT Services and Installation" was deceptive in context. (AC ¶¶ 27-29.)

Even assuming the challenged statements were deceptive, the same money-or-property defect discussed above as to Wells Fargo x8863 applies here. Paragraph 44 identifies "access to Wells Fargo accounts and related infrastructure" and "funds owned by Wells Fargo in Wells Fargo x7500," but supplies no facts identifying the Wells Fargo-owned funds Capstone allegedly sought to obtain through the challenged statements. (AC ¶ 44.) Instead, the pleading describes customer and third-party deposits, including proceeds from customer-owned securities, without explaining how obtaining those funds, rather than access to banking services, was an object of the alleged deception. (*Id.* ¶¶ 73-79.) For the reasons discussed above, bank account services and the

deprivation of accurate information do not themselves establish the required money-or-property object.[11]

The Amended Complaint's allegations fail to adequately attribute the challenged EDD response to Capstone, explain why its business description was false or fraudulent in context, or identify qualifying money or property that Capstone sought to obtain through the alleged deception. The first claim therefore fails to adequately plead either predicate offense as to Wells Fargo x7500.

**Failure to Plead a Proceeds Nexus.** Even assuming the alleged statements establish bank fraud or a violation of Section 1014, the government must separately plead that the balance seized from Wells Fargo x7500 constitutes or derives from proceeds of those offenses. The Amended Complaint alleges that the false statements procured the accounts, that obtaining control over funds and securities was an objective of the scheme, and that Capstone acquired deposit claims through the resulting banking arrangements. (AC ¶¶ 44-46, 91.) Those allegations identify the government's acquisition theory, but do not satisfy the separate proceeds requirement of Section 981(a)(1)(C). The issue is not whether Wells Fargo had a property interest in deposited funds, but whether the seized balance constitutes or derives from property obtained through the alleged offenses.

The Amended Complaint describes substantial deposits from customers and third parties, including proceeds from the sale or maturity of securities held through Wells Fargo x8863. (AC ¶¶ 73-79.) Those allegations explain the movement of funds into and through Wells Fargo x7500; they do not, however, explain how those funds are *proceeds* of the alleged statements made to the bank. As discussed above concerning Wells Fargo x8863, the identification of account-based rights does not itself establish that customer principal administered through the account was obtained as fraud proceeds. Paragraph 91 of the Amended Complaint asserts that the seized assets constitute or derive from the deposit claims Capstone acquired, but does not explain the asserted nexus beyond Capstone's ability to direct their disposition. Though Capstone is not insisting that the government

---

[11] The Amended Complaint does not allege that Capstone sought a loan, advance, or other extension of bank funds through the challenged statements. Rather, it describes Capstone's use of Wells Fargo x7500 to administer customer and third-party funds. (AC ¶¶ 73-79.) It is the failure to allege facts showing that Capstone sought to obtain bank money or property through the alleged deception, rather than merely access to services.

show complete tracing of every dollar at the pleading stage, the government must articulate an adequate legal basis for treating the customer principal as proceeds. *See Two Condos.*, 2021 WL 3810273, at *5 (dismissing a proceeds-based forfeiture theory where the allegations failed to supply the basic chronology connecting the alleged fraud proceeds to the defendant property).

The first claim should therefore be dismissed as to Wells Fargo x7500.

### B. The Second Claim Fails to Adequately Connect the Seized Chase Balance to the Alleged Wire-Fraud Proceeds.

The government's second claim for relief seeks forfeiture of the approximately $2,056,207.08 seized from Capstone's Chase account ("Chase x6970") under 18 U.S.C. § 981(a)(1)(C), alleging that those funds constitute or are derived from proceeds traceable to wire fraud under 18 U.S.C. § 1343. (AC ¶ 93.)[12] Even if the allegations describing the impersonation-fraud scheme are accepted as true, the Amended Complaint fails to sufficiently plead the connection between that offense and the particular balance seized, rather than merely the account's historical receipt of victim payments as the Ninth Circuit requires. *See Aguilar*, 782 F.3d at 1108-10.

Alleging wire fraud does not establish that the entire seized balance is forfeitable. Section 981(a)(1)(C) requires a connection between the identified offense and the specific defendant property: the property must constitute or derive from proceeds traceable to that offense. *See* 18 U.S.C. § 981(a)(1)(C). As the Ninth Circuit has held, "[t]here is nothing in the text of Section 981 that extends forfeiture to property of a defendant that is not traceable to the proceeds of the crime." *Thompson*, 990 F.3d at 690. In a viable forfeiture complaint, the government must plead the general contours of that connection, not merely describe the underlying fraud. *Two Condos.*, 2021 WL 3810273, at *3-5 (dismissing a forfeiture theory where the complaint failed to connect unlawful proceeds to the defendant properties).

Here, the government's own account of the seized balance exposes the missing link. According to the Amended Complaint, after the final victim deposit on December 31, 2025, Chase x6970 held $2,524,207.08. (AC ¶ 56.) Three transactions followed: two "believed to be" refunds

---

[12] Capstone separately reserves its innocent-owner defense under 18 U.S.C. § 983(d). The present motion challenges the sufficiency of the government's allegations connecting the seized property to the alleged offense.

to victims and a $500,000 transfer into Chase from Wells Fargo x7500, leaving the $2,056,207.08 seized balance. (*Id.*) The government alleges that this balance included both victim payments and Wells Fargo funds, reflecting the impersonation fraud and Capstone's alleged money-transmitting activities. (*Id.* ¶ 57.) Yet it supplies no factual connection between the distinct $500,000 Wells Fargo deposit and the impersonation-fraud scheme. (*Id.* ¶¶ 56-57.) The transfer's source and its association with alleged money transmission do not explain how it constitutes or derives from wire-fraud proceeds. Having identified that separate source within the seized balance, the government must plead facts bringing it within the proceeds theory asserted in the second claim.

The government cannot bridge that gap by treating every dollar remaining in Chase x6970 as wire-fraud proceeds merely because the account received victim payments. Its own allegations identify a separate $500,000 source without connecting that deposit to the offense underlying the second claim. Section 981(a)(1)(C) requires a pleaded proceeds nexus for the property the government seeks to forfeit. The Amended Complaint leaves out that essential connection even on the government's second attempt, and the second claim should be dismissed with prejudice.

### C. The Third Claim Fails to Allege Sufficient Facts to Conclude Capstone Was Operating as an Unlicensed Money-Transmitting Business.

The government's third claim for relief seeks forfeiture of the approximately $1,861,106.49 seized from Wells Fargo x7500, the approximately $2,056,207.08 seized from Chase x6970, and the approximately 1,122,483.28 USDT and 54,578.45 USDT seized from the two cryptocurrency wallets under 18 U.S.C. § 981(a)(1)(A), on the theory that those assets were involved in, or are traceable to property involved in, transactions violating 18 U.S.C. § 1960. This government theory also falls short.

Section 1960 prohibits knowingly operating an "unlicensed money transmitting business," which includes a money transmitting business that "is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or felony under State law." 18 U.S.C. § 1960(a), (b)(1)(A).[13] The Amended Complaint, however, lacks sufficient

---

[13] Section 1960 contains three different bases for imposing criminal liability for an unlicensed money transmitting business. *See* 18 U.S.C. § 1960(b)(1). Because the third claim for relief only states that Capstone was operating without a money-transmitter license in multiple states, which

factual allegations to conclude that Capstone knew the business was unlicensed and that each seized balance was connected to the alleged licensing violations. Further, as a matter of law, the Amended Complaint fails to adequately allege that Capstone's activities triggered the applicable state licensing requirements.

**1. The Amended Complaint Does Not Plead the Requisite Knowledge and a Sufficient Connection Between the Alleged Crime and the Seized Assets.**

**Failure to Plead Knowledge.** The Amended Complaint does not allege that Capstone knew it did not have a license in the enumerated states. "The government is required to prove that the defendant knew the money-transmitting business was unlicensed" for violations predicated on a state-license theory. *United States v. Elfgeeh*, 515 F.3d 100, 133 (2d Cir. 2008); *see also United States v. Talebnejad*, 460 F.3d 563, 570, 572 (4th Cir. 2006) (same). The Amended Complaint, however, does not adequately connect its allegations to that distinct knowledge requirement. It alleges that Capstone transmitted funds without the state money-transmitter licenses allegedly required for those activities. (AC ¶¶ 65, 95.) But knowledge of the business's activities and efforts to avoid bank scrutiny are not synonymous with knowledge that the relevant state licenses were absent. Indeed, *Elfgeeh* rejected as "unduly limited" an instruction requiring only knowledge that the defendant was transmitting money on behalf of others. 515 F.3d at 134-35. The government must support the additional inference that the relevant operators knew the business was unlicensed, rather than leave that element to follow automatically from knowing participation.

**Failure to Plead a Nexus to the Violation.** Independently, the Amended Complaint does not adequately connect the entirety of the defendant assets' current balances to the alleged licensing violations. Section 981(a)(1)(A) reaches property involved in a transaction or attempted transaction violating Section 1960, or property traceable to such property. Where the government proceeds on an involvement or facilitation theory, it must establish a substantial connection between the

---

clearly is invoking only subsection (b)(1)(A) of the statute, the other subsections cannot serve as the basis for the government's purported civil forfeiture. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-92 (9th Cir. 2000) ("[T]heories of liability . . . must be alleged in the complaint in order to provide the basis for later trial or summary judgment.").

property and the offense, and its complaint must contain sufficiently detailed facts supporting a reasonable belief that it can meet its burden at trial. *See* 18 U.S.C. § 983(c)(3); Supp. R. G(2)(f).

Even assuming the identified state-linked transactions violated Section 1960 (which they do not), the Amended Complaint must connect those violations to the property actually seized. The issue is not merely whether Capstone used the accounts and wallets to transmit funds, but whether the alleged facts support forfeiture of each remaining balance in its entirety. *See, e.g.*, *United States v. 674,739.480211 USDT of Tether cryptocurrency*, 2026 WL 592743, at *9 (N.D.N.Y. Mar. 3, 2026) (declining to find a substantial connection between the seized assets and the violation when the government only alleged facts tracing a portion of the account back to a victim). For the cryptocurrency wallets, the Amended Complaint describes USDT transferred out of the wallets in completed transactions. (AC ¶¶ 60-64.) But it does not explain how the USDT remaining at seizure was involved in those transactions, was traceable to property involved in them, or had any connection to a state-specific transaction. In fact, there are no allegations explaining how the current balance in the wallets even got there, let alone tying that balance to a violation of Section 1960. (*See id.* ¶¶ 58-64.)

While the Amended Complaint does identify a handful of particular state-linked deposits into Wells Fargo x7500 and Chase x6970, it does not, without further factual explanation, establish the connection between the alleged licensing violations and the entirety of each seized bank balance. (*See, e.g.*, AC ¶¶ 61, 70.) The government alleges that the accounts functioned together as a single money-transmitting operation continuing through seizure and summarily characterizes the assets as involved in that business. (*Id.* ¶¶ 72-73, 87, 95.) But those allegations do not eliminate the need to explain each balance's connection to the alleged offense.

If the government's theory is that the remaining funds facilitated the unlicensed business, it must plead facts supporting a substantial connection between those funds and that business. Capstone does not demand a transaction-by-transaction accounting at the pleading stage. It challenges the unsupported inference that an account's or wallet's use in the alleged business necessarily renders its entire remaining balance forfeitable under Section 981(a)(1)(A). Without

sufficient allegations to conclude that the seized funds were involved in a transaction violating Section 1960, this Court cannot allow the third claim to move forward.

**2. The Amended Complaint Fails to Plead a Viable State-Licensing Theory.**

Casting aside the pleading deficiencies, the third claim for relief relies on the presumption that Capstone was required to obtain money-transmitter licenses ("MTLs") in multiple states across the country. (*See* AC ¶ 65.) But the Amended Complaint lacks sufficient factual allegations supporting this presumption. Nor could it, because under the laws of the states mentioned in the Amended Complaint, Capstone was *not* required to obtain a license.

To effect a civil forfeiture of each account under the state-licensing theory, the government must allege that Capstone was required to hold an MTL in each relevant state. *See* 18 U.S.C. § 1960(b)(1)(A). However, the Amended Complaint only contains conclusory statements that Capstone was required to have a license in the relevant states and that Capstone was not licensed. (*See* AC ¶ 65.) Those are legal conclusions that this Court is not required to accept as true. *See Twombly*, 550 U.S. at 555. And even where the Amended Complaint attempts for some—but not all—of the relevant states to recite the applicable state laws, it does so in an equally conclusory fashion. (*See* AC ¶¶ 69-71.) Lacking sufficiently detailed facts regarding the state laws Capstone allegedly violated, the government cannot state a claim that the accounts were involved in the operation of an unlicensed money transmitting business in violation of Section 1960.

It is not just lack of detail that requires dismissal of this claim. The government also fails to allege activity that would trigger licensing requirements in the relevant states, as a matter of law. Take California as an example. (*See* AC ¶ 70.) California's Money Transmitting Act ("MTA") prohibits engaging in "the business of money transmission in [the] state . . . unless the person is licensed." Cal. Fin. Code § 2030(a). "Money transmission" is defined as "[r]eceiving money for transmission from a person located in [the] state." *Id.* § 2003(r)(3). The statute goes on to define "[r]eceiving money for transmission" as "receiving money or monetary value in the United States for transmission within or outside the United States." *Id.* § 2003(x). The key words in both definitions are "for transmission." The MTA makes it clear that the statute is meant to regulate

entities who engage in money transmission *at the direction of senders*, in order to protect those customers of the money transmitting business. The findings incorporated in the MTA state that "[p]ersons who use money transmission businesses in this state use those businesses for, among other purposes, paying for the necessities of life and transmitting money to family members" and that "[t]he failure of money transmission businesses to fulfill their obligations would cause loss to consumers . . . ." Cal. Fin. Code § 2001(b), (c). The MTA further emphasizes the important role of the sender by requiring licensees to "forward all money received for transmission . . . *to the person designated by the customer*." Cal. Fin. Code § 2101 (emphasis added).

Accordingly, for Capstone to be subject to an MTL requirement in California, it must receive money from a person located in California *for the purpose of transmission on that sender's behalf and at their direction*. But that is not what the Amended Complaint alleges. Rather, it alleges a scheme where Capstone was "process[ing] transactions" on behalf of EQIBank, "an offshore bank registered in the Commonwealth of Dominica." (AC ¶ 14.) The Amended Complaint also alleges that Capstone withdrew millions from Wells Fargo x7500 "on behalf of Cryptocurrency Company 1/Cryptocurrency Exchange 1," which are "foreign entit[ies]." (*Id.* ¶¶ 16, 79.) There are no allegations that persons located in California provided funds to Capstone *with instructions to transmit the funds to any other party or location*, or even that the senders ever had direct contact with Capstone to express a purpose for their payments. The intent to send money for the purpose of transmission cannot be inferred from the Amended Complaint either because there are no allegations that the California-specific deposits were ever transferred out of the account. (AC ¶ 70.) Instead, the directions are alleged to have come from EQIBank or Cryptocurrency Company 1, who are—as the Amended Complaint recognizes—not persons within California or any state. (*See id.* ¶¶ 14, 16.) The allegations regarding the impersonation-fraud scheme involving Chase x6970 also do not show any requirement to obtain an MTL; those senders thought they were making payments to the FBI, not requesting the transmission of money to another party or location through Capstone. (*Id.* ¶ 52.) There are likewise no allegations that senders from California deposited money into wallet address wMHf6 or wallet address 2Tvhe for the purpose of transmission on their behalf (whether by Capstone or otherwise).

The other states listed in the Amended Complaint have similar laws requiring a business to have an MTL to receive money from a person in the state *for the purpose of transmission*. *See* Colo. Rev. Stat. § 11-110-201(20)(a)(III) (defining money transmission as "[r]eceiving money for transmission from a person located in the state"); Fla. Stat. § 560.103(27)(a) (requiring a license for receiving money "for the purpose of acting as an intermediary to transmit currency"); Mo. Rev. Stat. § 361.906(18)(c) (requiring a license for "[r]eceiving money for transmission from a person located in this state"); Ohio Rev. Code Ann. § 1315.02(A) (prohibiting receipt of money "for transmission from a person located in this state" without license); Nev. Rev. Stat. § 671.013(1)(c) (requiring a license for "[r]eceiving money or credits for transmission from a person located in this State"); N.Y. Banking Law § 641(1) (prohibiting "receiving money for transmission" from an individual in the state without license).[14]

These state law definitions of regulated money transmission differ from the Bank Secrecy Act's ("BSA") definition in a critical respect. Under the federal regulation, "money transmission services" includes "the *acceptance* of currency, funds, or other value that substitutes for currency from one person." 31 C.F.R. § 1010.100(ff)(5)(i)(A) (emphasis added). The Amended Complaint does allege that Capstone engaged in (1) the acceptance of money from one person *and* (2) the transmission of money to another location. (*See, e.g.*, AC ¶ 31.) But for the reasons discussed above, acceptance *and* transmission is different from *receiving for transmission*; activity subject to the BSA is alone insufficient to trigger licensing requirements in the relevant states.

Meanwhile, the Amended Complaint acknowledges that, at the federal level, Capstone was registered with FinCEN as a money service business. (*See id.* ¶ 30.) The Amended Complaint rests on the false premise that the state money transmission laws cover the same activity as the BSA. The differences between these regulatory schemes mean that Capstone was not subject to a state licensing requirement by virtue of the activity alleged in the Amended Complaint. This fact is fatal to the forfeiture theory pled in the third claim. The third claim should also be dismissed.

---

[14] *See* Jane M. Azia, Director of Non-Depository Institutions and Consumer Protection, *Industry Letter: Money Transmitters with No Physical Presence in New York*, N.Y. Dep't of Fin. Servs. (Mar. 31, 2011), https://perma.cc/NWT7-548H.

## V. CONCLUSION

This Court should dismiss the Amended Complaint with prejudice.

Dated: November 2, 2026

Respectfully submitted,
COOLEY LLP

By: */s/ Brian Klein*
Brian Klein

Attorneys for Capstone Limited