ERIC GRANT
United States Attorney
NICHOLAS M. FOGG
KEVIN C. KHASIGIAN
Assistant U. S. Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $79,109,828.17 SEIZED FROM WELLS FARGO SECURITIES LLC ACCOUNT NUMBER 1BD68863, HELD IN THE NAME OF CAPSTONE LIMITED, ET AL.,<br><br>Defendants. | 2:26-CV-02476-DAD-CKD<br><br>UNITED STATES' AMENDED FIRST SET OF RULE G(6) SPECIAL INTERROGATORIES TO CLAIMANT CAPSTONE LIMITED |

PROPOUNDING PARTY: UNITED STATES OF AMERICA

RESPONDING PARTY: CLAIMANT CAPSTONE LIMITED

SET NO.: ONE (AMENDED)

The United States of America, pursuant to Supplemental Rules G(6)(a) and G(6)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and Federal Rule of Civil Procedure 33 to the extent applicable, hereby requests that claimant **Capstone Limited** ("**Capstone**") provide written, sworn responses to the following interrogatories within *21 days* of receiving this document. Under Supplemental Rule G(6)(c), the United States need not respond to Capstone's pending motion to dismiss (Dkt. 35) until *21 days* after Capstone has answered these interrogatories.

This Amended First Set is served in light of the United States' Amended Complaint (Dkt. 28) and Capstone's November 6, 2026 Notice (Dkt. 40) confirming that its October 5, 2026 Verified Claim (Dkt. 13) remains operative as to the Amended Complaint. It supersedes the United States' First Set of Rule G(6) Special Interrogatories served October 17, 2026 (Dkt. 19). Consistent with Supplemental Rule G(6)(a), each interrogatory below is limited to Capstone's identity and its relationship to the Defendant Assets, and each is directed to the bailment, custodial, and ownership interests Capstone asserts in its Verified Claim.

Local Rule 250.2(a) for the Eastern District of California provides that the interrogatory is to be "arranged that after each separate question there shall appear a blank space reasonably calculated to enable the answering party to insert the answers and/or objections. The answering party shall answer or object within the spaces provided or, if unable to do so, shall retype the interrogatories along with the answers and/or objections." While the United States provides blank space after each interrogatory, it also intends to send counsel a WORD version of the interrogatories to allow Capstone to format responses as it deems appropriate.

**Instructions for Use**

A. All information is to be divulged which is in the possession of the individual party, its attorneys, investigators, agents, employees or other representatives of the named party and its attorneys.

B. These interrogatories are intended as continuing interrogatories, and require you to answer by supplemental responses, setting forth any information within the scope of the interrogatories as may be acquired by you, your attorneys or your other representatives following your original responses.

C. If you cannot answer any of the following Interrogatories in full after exercising due diligence in attempting to secure the information necessary to do so, answer to the extent possible, providing all information available to you as of the date of your response to these Interrogatories, explain why you cannot answer the remainder, and state the nature of the information or knowledge that you cannot furnish.

D. Answer each interrogatory with the facts it calls for. Where an interrogatory asks Capstone to identify records or documents, Capstone may identify them by type, date, author or parties, and a brief description, and need not describe each document individually.

E. With respect to the application of privileges, if you decline to answer all or part of an Interrogatory, identify a writing or communication, or provide information, on the ground of a claim of privilege, so state in response to the Interrogatory, describe the privileges claimed, and describe the factual basis on which the privilege is claimed.

F. If in answering any of the Interrogatories you encounter any ambiguity, either in the Interrogatory itself or in any definition or instruction which is relevant to the Interrogatory, state in your answer the matter deemed ambiguous, and the construction employed by you in answering the Interrogatory.

G. Whenever any objection is made to any numbered or letter paragraph of any Interrogatory, or portion thereof, an answer shall be furnished to any other numbered or letter paragraph of such Interrogatory, or portion thereof, as to which there is no objection.

H. Unless otherwise specified, the relevant time period for each of the following Special Interrogatories is the Relevant Time Period defined below.

I. Unless an interrogatory states otherwise, these interrogatories seek information at a summary level sufficient to identify Capstone's relationship to each Defendant Asset. They do not ask Capstone to describe every transaction, identify every witness, or describe every document. Where an interrogatory asks for an amount and Capstone cannot state it exactly, Capstone may give its best estimate and explain how the estimate was derived.

J. The term "document" as used herein, is to be liberally construed to include without limitation, all originals, copies and duplicates of all tangible forms of graphic, photographic and phonic recordings, including but not limited to, correspondence, letters, records, invoices, contracts, statements, canceled checks, and all other kinds of written or documentary personal property.

K. The term "Defendant Assets" means, collectively, the five *in rem* defendants in the case, and "each" or "a particular" item refers to any one of the defendant assets individually, namely:

a. **Wells Fargo x8863**: approximately $79,109,828.17 seized from Wells Fargo Securities LLC account number 1BD68863, held in the name of Capstone Limited;

b. **Wells Fargo x7500:** approximately $1,861,106.49 seized from Wells Fargo Bank account number 9852677500, held in the name of Capstone Limited;

c. **Chase x6970:** approximately $2,056,207.08 seized from JPMorgan Chase Bank account number 000000723026970, held in the name of Capstone Limited;

d. **Wallet 1**: approximately 1,122,483.28 USDT seized from virtual currency address TJCaXo9kCxmXXcD4yrELjvzPvAPjg2Tvhe; and

e. **Wallet 2**: approximately 54,578.45 USDT seized from virtual currency address TKKrYKhyaLRd6oVqjCAL31akjvDkwwMHf6.

L. The terms "Bailment," "Bailor," "Bailee," and "Custodian" mean, respectively, a delivery of specific, identified personal property by one person (the bailor) to another (the bailee/custodian) in trust for a particular purpose, under an express or implied agreement that the identical property (or its agreed equivalent) will be returned to the bailor or dealt with according to the bailor's directions when the purpose is accomplished, with no transfer of ownership to the bailee.

M. The term "Capstone" means Capstone Limited, and any of its officers, employees, agents, and anyone acting on its behalf. "You" and "your" refer to Capstone. Kotaro Shimogori and Mary Jeanne Thompson are natural persons that documents from the relevant financial institutions reference as being owners and/or operators of Capstone.

N. The term "EQIBank" means EQIBank Limited as identified in Paragraphs First through Fourth of Capstone's Verified Claim, and any entity or person doing business as, affiliated with, or related to EQIBank, including any entity you contend is the bailor of any Defendant Assets.

O. The term "Treasury instrument" means any U.S. Treasury bill, note, bond, or other U.S. government security, and any money-market fund holding such securities, that was transferred to, held in, redeemed, liquidated, or reinvested through any account constituting or holding an item of Defendant Assets.

P. The term "Relevant Time Period" means January 1, 2024 through the date of your answers, unless a specific interrogatory states otherwise.

Q. The term "Beneficial Owner" means a person or entity that has a level of control over, or entitlement to, the funds or assets in the account that, as a practical matter, enables that person or entity, directly or indirectly, to control, manage, or direct the account.

R. A request for the "identity of" or that you "identify a person" constitutes a request to state:

a. The present name of such person, if known, or if not known, as complete a description of such person as possible.

b. The present address and telephone number, residential and business, of such person, if known, and if not known, the last known address and telephone number of such person and all available information as to his whereabouts.

S. A request for the "description of" or "identification of" what you describe as "a document", constitutes a request for the following:

1. Its nature (e.g., contract, letter, tape recording, etc.).

2. Its title, if any.

3. A brief summary of its contents.

4. The date and place of its preparation.

5. The identity of all people signing, preparing, or making it, or participating in or present at its preparation, making or signing.

6. The identity of the person having custody of the document and its present location, if known, and if unknown, its last known location and any available information as to its whereabouts.

**SPECIAL INTERROGATORY NO. 1:**

State Capstone's full legal name, entity type, jurisdiction and date of formation, any other names under which it has done business, its principal place of business, and each jurisdiction in which it is registered to do business.

ANSWER:

**SPECIAL INTERROGATORY NO. 2:**

Identify each person or entity that held an ownership interest in Capstone, or served as an officer, director, or manager of Capstone, during the Relevant Time Period, and state each owner's approximate percentage of ownership.

ANSWER:

**SPECIAL INTERROGATORY NO. 3:**

Describe the roles of Mary Jeanne Thompson and Kotaro Shimogori at Capstone during the Relevant Time Period, including any ownership interest, title, or position each held, and the authority each had over any account or wallet holding a Defendant Asset.

ANSWER:

**SPECIAL INTERROGATORY NO. 4:**

State whether any person who owned, managed, or served as an officer or director of Capstone during the Relevant Time Period has also owned, managed, served as an officer or director of, or been employed by EQIBank. If so, identify each such person and each position held.

ANSWER:

**SPECIAL INTERROGATORY NO. 5:**

State Peter L. Platt's title at Capstone, the date his employment or affiliation with Capstone began, and the sources of information on which he relied in verifying Capstone's Verified Claim, identifying persons by name or position and records by category.

ANSWER:

**SPECIAL INTERROGATORY NO. 6:**

For each Defendant Asset, state whether Capstone claims an interest as owner, as bailee, as custodian, or in some other capacity, and state the amount of that Defendant Asset to which each claimed interest applies.

ANSWER:

**SPECIAL INTERROGATORY NO. 7:**

State whether Capstone asserts an interest in any Defendant Asset on behalf of any other person or entity. If so, identify each such person or entity and state the basis of Capstone's authority to assert that interest, including whether Capstone has written authorization to do so.

ANSWER:

**SPECIAL INTERROGATORY NO. 8:**

State whether Capstone's Verified Claim uses "custodian" and "bailee" to describe the same relationship. If not, describe the difference and state which relationship Capstone relies on for each Defendant Asset.

ANSWER:

**SPECIAL INTERROGATORY NO. 9:**

State whether Capstone contends it would remain obligated to EQIBank or to any EQIBank customer for any Defendant Asset if that asset is forfeited. If so, identify each person to whom Capstone contends it would be obligated and the approximate amount.

ANSWER:

**SPECIAL INTERROGATORY NO. 10:**

For each Defendant Asset in which Capstone claims an interest as bailee, identify each person or entity Capstone contends is a Bailor and state the amount of that Defendant Asset attributable to each Bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 11:**

For each Defendant Asset in which Capstone claims an interest as bailee, identify each Beneficial Owner, state the amount attributable to each, and state whether each Beneficial Owner is the same person or entity as the Bailor.

ANSWER:

**SPECIAL INTERROGATORY NO. 12:**

For each Beneficial Owner identified in response to Special Interrogatory No. 11 who is not also the Bailor of that property, state the basis on which Capstone contends the Bailor had authority to place that Beneficial Owner's property in bailment with Capstone.

ANSWER:

**SPECIAL INTERROGATORY NO. 13:**

For each EQIBank customer Capstone contends is a Bailor or Beneficial Owner, state whether Capstone knew that customer's identity when Capstone first received that customer's property. If Capstone contends it held property in bailment for a customer whose identity it did not know, state how Capstone determined whose property it was holding.

ANSWER:

**SPECIAL INTERROGATORY NO. 14:**

State whether any person or entity other than EQIBank has, since the seizure of the Defendant Assets, demanded the return of, or asserted an interest in, any Defendant Asset to Capstone. If so, identify each such person or entity and the Defendant Asset involved.

ANSWER:

**SPECIAL INTERROGATORY NO. 15:**

State whether any portion of any Defendant Asset was received from, or held for, Victory Conquest. If so, state the approximate amount and identify Victory Conquest's relationship to Capstone and to EQIBank.

ANSWER:

**SPECIAL INTERROGATORY NO. 16:**

State whether Capstone contends there was a single bailment covering EQIBank and all of its customers, or separate bailments for particular customers, accounts, or assets. For each bailment, identify the parties, state the approximate date it began, and identify the Capstone accounts or wallets used to hold the property.

ANSWER:

**SPECIAL INTERROGATORY NO. 17:**

Identify each written agreement Capstone contends created or governs any bailment of the Defendant Assets by title, date, and parties, and quote any language in it that designates a bailor, bailee, or custodian. If Capstone relies on any oral agreement, identify the parties to it, state its approximate date, and state its material terms.

ANSWER:

**SPECIAL INTERROGATORY NO. 18:**

For each bailment, state whether Capstone was required to return the identical property, return property of equivalent value, or hold or transfer the property as instructed, and state whether Capstone was permitted to invest, sell, convert, or transfer the property to third parties.

ANSWER:

**SPECIAL INTERROGATORY NO. 19:**

State whether any property Capstone contends it held in bailment was transferred to persons or entities other than the Bailor, rather than returned to the Bailor. If so, state in general terms the source of Capstone's authority to make those transfers.

ANSWER:

**SPECIAL INTERROGATORY NO. 20:**

State whether Capstone received compensation for holding or handling property under any bailment. If so, identify who paid it and describe its general basis (for example, a percentage, a spread, or a flat fee).

ANSWER:

**SPECIAL INTERROGATORY NO. 21:**

State whether the EQIBank customers Capstone contends are Bailors or Beneficial Owners were informed that their property would be held by Capstone, and identify the principal documents or communications by which they were informed.

ANSWER:

**SPECIAL INTERROGATORY NO. 22:**

For each Defendant Asset, describe in summary form how the property came into Capstone's possession, including the approximate date or period during which it was received, and whether it came

directly from EQIBank, from an EQIBank customer, or from another person or entity. Capstone need not describe each individual transfer.

ANSWER:

**SPECIAL INTERROGATORY NO. 23:**

For each Defendant Asset Capstone contends EQIBank placed in bailment, state whether EQIBank owned, held, or controlled that property before Capstone received it. If so, identify the account or wallet through which EQIBank held or controlled it.

ANSWER:

**SPECIAL INTERROGATORY NO. 24:**

For any portion of a Defendant Asset that Capstone received from a person or entity other than EQIBank, state the basis on which Capstone contends EQIBank, rather than the sender, is the Bailor of that property.

ANSWER:

**SPECIAL INTERROGATORY NO. 25:**

For each of Wells Fargo x8863, Wells Fargo x7500, and Chase x6970, identify the account holder, state the approximate date the account was opened, and identify each person who had signature or trading authority over the account at the time of seizure.

ANSWER:

**SPECIAL INTERROGATORY NO. 26:**

For each of Wallet 1 and Wallet 2, identify each person or entity that held or controlled the private keys at the time of seizure, and state the approximate date Capstone began using the wallet.

ANSWER:

**SPECIAL INTERROGATORY NO. 27:**

State whether EQIBank or any EQIBank customer could instruct Capstone to transfer, withdraw, sell, or convert property held in the accounts or wallets holding the Defendant Assets. If so, describe in general terms how such instructions were given (for example, by email, portal, or API) and who was authorized to give them.

ANSWER:

**SPECIAL INTERROGATORY NO. 28:**

State whether Capstone maintained records showing the portion of each Defendant Asset attributable to each Bailor or Beneficial Owner. If so, identify those records by type and the system in which they are kept.

ANSWER:

**SPECIAL INTERROGATORY NO. 29:**

State whether property Capstone contends it held as bailee was held in the same accounts or

wallets as Capstone's own property or the property of other Bailors. If so, describe in general terms how Capstone kept track of each person's share.

ANSWER:

**SPECIAL INTERROGATORY NO. 30:**

State how Capstone recorded the Defendant Assets, or the property from which they derive, in its financial statements or general ledger as of its most recent fiscal year-end before the seizure: as Capstone's own assets, as property held for others, or otherwise.

ANSWER:

**SPECIAL INTERROGATORY NO. 31:**

Describe in general terms how property held in Capstone's accounts or wallets was reflected on EQIBank's books or in EQIBank customer accounts, including whether the entry represented ownership of specific property, a deposit balance, or a claim against EQIBank or Capstone.

ANSWER:

**SPECIAL INTERROGATORY NO. 32:**

State whether any portion of Wells Fargo x8863 consists of, or derives from, Treasury instruments. If so, identify in summary form each person or entity that owned those Treasury instruments before they were transferred to Capstone, and state whether Capstone contends they were held under the same bailment as the other Defendant Assets.

ANSWER:

**SPECIAL INTERROGATORY NO. 33:**

For Wallet 1, state whether the USDT was transferred to Capstone by a Bailor or was acquired by Capstone using funds it already held (for example, through an exchange such as BlockFills). If it was acquired, state how Capstone contends the acquired USDT became property held in bailment.

ANSWER:

**SPECIAL INTERROGATORY NO. 34:**

The United States contends that on or about January 30, 2026, Capstone represented to Wells Fargo that approximately $100 million in Treasury and liquidity instruments was Capstone's own capital, and that Capstone did not accept or hold customer funds or maintain custodial accounts. State whether Capstone made those representations. If it did, state whether Capstone contends they were accurate and, if not, state who Capstone now contends owned that property.

ANSWER:

**SPECIAL INTERROGATORY NO. 35:**

State whether Capstone told Wells Fargo or JPMorgan Chase, when opening or maintaining any account holding a Defendant Asset, that it held property for EQIBank or for any EQIBank customer. If so, state the approximate date and form of each such statement.

ANSWER:

**SPECIAL INTERROGATORY NO. 36:**

For each Defendant Asset, state the amount, if any, that Capstone contends was payment to Capstone for its own services, and the amount Capstone contends is held in bailment.

ANSWER:

**SPECIAL INTERROGATORY NO. 37:**

State whether Capstone treated the Defendant Assets, or the funds from which they derive, as funds held or transmitted on behalf of others for purposes of its Bank Secrecy Act and anti-money-laundering obligations.

ANSWER:

**SPECIAL INTERROGATORY NO. 38:**

For the approximately $55,452.68 in Wells Fargo x7500 that Capstone claims to own, state approximately when and from whom Capstone received the funds and the general nature of the transaction (for example, a fee for services), and identify the principal documents reflecting it.

ANSWER:

**SPECIAL INTERROGATORY NO. 39:**

For the approximately 54,578.45 USDT in Wallet 2 that Capstone claims to own, state approximately when and from whom Capstone received the USDT and the general nature of the transaction, and identify the principal documents reflecting it.

ANSWER:

**SPECIAL INTERROGATORY NO. 40:**

For Wells Fargo x7500, state how Capstone determined that approximately $55,452.68 of the account belongs to Capstone and that the remaining approximately $1,805,653.81 is held in bailment, including when that determination was made, who made it, and the records on which it is based.

ANSWER:

**SPECIAL INTERROGATORY NO. 41:**

State whether Capstone held its own funds in Wells Fargo x7500 together with property it contends it held in bailment. If so, state why Capstone did not hold the property it contends it held in bailment in a separate account.

ANSWER:

**SPECIAL INTERROGATORY NO. 42:**

Identify each account or wallet Capstone used during the Relevant Time Period to hold only its own funds, and each account or wallet it used to hold only property it contends was held in bailment.

ANSWER:

**SPECIAL INTERROGATORY NO. 43:**

Describe in general terms how Capstone tracked its own share of Wells Fargo x7500 as funds moved into and out of the account, identify the person responsible for doing so, and identify the records Capstone used.

ANSWER:

**SPECIAL INTERROGATORY NO. 44:**

State whether Capstone used funds in Wells Fargo x7500 that it contends were held in bailment to pay its own expenses or obligations, or used its own funds in that account to make transfers on behalf of any Bailor or Beneficial Owner. If so, describe those uses in general terms.

ANSWER:

**SPECIAL INTERROGATORY NO. 45:**

If any portion of the funds or USDT Capstone claims to own in Wells Fargo x7500 or Wallet 2 represents fees, commissions, spreads, or other compensation, identify each person or entity that paid it, and state whether that person or entity is a Bailor or Beneficial Owner identified in response to these interrogatories.

ANSWER:

**SPECIAL INTERROGATORY NO. 46:**

State why Capstone held the approximately 54,578.45 USDT it claims to own in Wallet 2 separately from the USDT it claims to hold in bailment in Wallet 1, and state whether any USDT in

Wallet 2 was transferred from Wallet 1, from EQIBank, or from any EQIBank customer.

ANSWER:

**SPECIAL INTERROGATORY NO. 47:**

For each Defendant Asset, identify, by financial institution or platform and account holder, the principal accounts or wallets from which the property was transferred into the Capstone account or wallet holding it.

ANSWER:

**SPECIAL INTERROGATORY NO. 48:**

Identify the persons, by name or position, most knowledgeable about the bailment Capstone asserts and about Capstone's relationship to each Defendant Asset, and state the general subject of each person's knowledge. Capstone need not identify every person with knowledge.

ANSWER:

**SPECIAL INTERROGATORY NO. 49:**

Identify the principal documents that support Capstone's claimed interest as bailee in each Defendant Asset, by type, date, and parties. Capstone need not identify every document.

ANSWER:

Sign the attached declaration and return with your responses to the Special Interrogatories.

Dated: November 8, 2026

ERIC GRANT
United States Attorney

/s/ Kevin C. Khasigian
NICHOLAS M. FOGG
KEVIN C. KHASIGIAN
Assistant U.S. Attorneys

**DECLARATION OF PURPORTED-CLAIMANT TO PLAINTIFF'S AMENDED FIRST SET OF SPECIAL INTERROGATORIES**

Under penalty of perjury, I hereby certify that the answers to the above Special Interrogatories are true, correct and complete.

Executed at ______________________________________ (Location where signed) on ______________________, 2026.

__________________________________
_____________

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers. That on November 8, 2026, he served a copy of the

UNITED STATES' AMENDED FIRST SET OF RULE G(6) SPECIAL INTERROGATORIES TO CLAIMANT CAPSTONE LIMITED

(1) Through electronic mail to Capstone Limited's counsel of record, Brian Klein and John Bostic (bklein@cooley.com and jbostic@cooley.com)

(2) Through ECF filing in 2:26-CV-02476-DAD-CKD.

Address(es):
Capstone Limited

/s/ Kevin C. Khasigian