ERIC GRANT
United States Attorney
NICHOLAS M. FOGG
KEVIN C. KHASIGIAN
Assistant U. S. Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY $79,109,828.17 SEIZED FROM WELLS FARGO SECURITIES LLC ACCOUNT NUMBER 1BD68863, HELD IN THE NAME OF CAPSTONE LIMITED, ET AL.,<br>Defendants. | 2:26-CV-02476-DAD-CKD<br><br>UNITED STATES' OPPOSITION TO CAPSTONE LIMITED'S MOTION TO STAY DISCOVERY |

## I. INTRODUCTION

Capstone asks the Court to decide its motion to dismiss before Capstone has to say whose money this is. The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions[1] ("Supplemental Rules") establish the opposite sequence. The government is entitled to obtain answers to its standing interrogatories before responding to any motion to dismiss, and any challenge to Capstone's standing must be resolved before the Court considers its motion to dismiss. Capstone's proposed stay would reverse that order.

Capstone never comes to grips with what standing requires. Its claim explains almost nothing, yet it asks the Court to set aside self-executing procedural rules, and three Ninth Circuit decisions applying

[1] All rule citations are to the Supplemental Rules unless otherwise noted.

them, so it can press a dispositive motion without ever explaining the bailment that supposedly gives it standing to bring a claim. Capstone's claim gives no meaningful account of the bailment arrangements, the property entrusted to it, the customers it claims to represent, or how any of that connects to the seized assets. Of the roughly $84 million seized, Capstone claims to own about one-tenth of one percent. For the rest, it is a "bailee" for "EQIBank Limited and its customers," without naming a single customer.

Those gaps are the whole question. They are exactly what Rule G(6) interrogatories exist to answer: who is this claimant, and why is it here? Capstone won't say. It won't even identify whose property it was holding. Capstone wants the Court to accept its bailment without letting the government examine it. And it cites no decision, from any court, allowing a claimant to withhold answers to standing interrogatories while pushing its own motion to dismiss ahead of them.

The motion should be denied.

## II. <u>PROCEDURAL HISTORY</u>

This is an *in rem* forfeiture action against approximately $84 million seized from bank accounts and cryptocurrency wallets connected to Capstone Limited, a Sacramento-based company registered with FinCEN as a money services business. ECF No. 1. Bank records list Mary Jeanne Thompson as Capstone's owner, and she alone appears on the account opening documents for the seized accounts. *Id.* at ¶¶ 22, 28. But Kotaro Shimogori allegedly directed the company's banking activity. *Id.* at ¶¶ 4, 37, 54. Why Thompson's name is on the paperwork while Shimogori ran the accounts is one subject of the Rule G(6) special interrogatories. *See* ECF No. 41 at Interrogatory No. 3.

The government filed its verified complaint in July 2026. ECF No. 1. It alleges that Capstone ran a money transmitting business and misrepresented its business to banks to avoid the heightened due diligence banks apply to money services businesses. It further alleges that Capstone took in hundreds of millions of dollars in money and securities from customers, converted those assets into U.S. dollars in its checking accounts, and wired funds to third parties around the world. To get access to U.S. payment rails, Capstone allegedly misrepresented its business to its banks, including Wells Fargo, Citibank, and JPMorgan Chase. Capstone told them it was an "IT business" that was "paid in Treasury Bills." Capstone did not tell them it moved money for a fee. The complaint alleges Capstone did this deliberately, as part of a broader scheme to defraud the banks and others, and to avoid the heightened due diligence banks

apply to money services businesses.

On October 5, 2026, Capstone filed a verified claim and a motion to dismiss. ECF Nos. 13-14. Its claim characterizes nearly all the seized funds as property held in bailment. ECF No. 13. Notably, Capstone asserts that it acted as "bailee" "for bailor EQIBank Limited and its customers." Id. But the claim does not identify those customers, explain the terms of any bailment, or describe how the seized assets came to be held under those arrangements.

On October 17, 2026, the government served Rule G(6) special interrogatories directed at those omissions. ECF No. 19. Each asked a version of the same basic question: who gave Capstone this property, and on what terms? Set side by side, the omissions and the questions speak for themselves:

| **What Capstone's Claim says:** | **What The Interrogatory Asks:** |
| --- | --- |
| It is bailee "for bailor EQIBank Limited and its customers." | Who are the bailors, and how much of each seized asset belongs to each one? (No. 3) |
| Nothing. | Who are the beneficial owners, and what gave EQIBank authority to place their property with Capstone? (No. 4) |
| Nothing. | Was there one bailment or many? Who were the parties, when did each begin, and what property did each cover? (No. 6) |
| Nothing. | For assets that came from someone other than EQIBank, who sent them, and why is EQIBank the bailor? (No. 12) |
| Nothing. | How did Capstone accept property in bailment, and how did it know whose property it was holding? (No. 13) |

These questions track the Rule G committee notes and the case law permitting inquiry into the "nature and circumstances" of a claimed bailment. *See* Supp. R. G advisory committee's note to 2006 adoption ("If the claimant asserts a relationship to the property as bailee, the interrogatories can inquire

into the bailor's interest in the property and the bailee's relationship to the bailor."). Had Capstone's claim supplied that basic information, the interrogatories would not have been necessary. Because it didn't, they were.

That same day, the government filed a notice that, under Rule G(6)(c), its response to the motion to dismiss is due 21 days after Capstone answers the special interrogatories. ECF No. 20.

On October 22, 2026, Capstone moved to stay its obligation to respond to the special interrogatories. ECF No. 25. Its position is that its standing is "not even reasonably in dispute," so it need not answer the interrogatories that Rule G(6) entitles the government to serve. *Id.*

On October 26, 2026, the government filed a verified amended complaint as of right under Rule 15(a)(1)(B). ECF No. 28. The amended complaint maintains that Capstone operated a money transmitting business and lied about its business to financial institutions to avoid the scrutiny ordinarily applied to such businesses. By doing so, the financial institutions were duped into opening Capstone's bank accounts, accounts that Capstone immediately started moving hundreds of millions of dollars of its "customers" through, mostly to international recipients.

On November 2, 2026, Capstone refiled its motion to dismiss, now directed at the amended complaint, and on November 4, 2026, it refiled its motion to stay. ECF Nos. 35, 37.

In its motion to stay, Capstone announces its excusal from answering Rule G(6) interrogatories because its allegations "are corroborated by EQIBank's verified claim [and so] there is no genuine question left for Rule G(6) discovery to test[.]" ECF No. 37 at 9. However, EQIBank's claim "asserts an ownership **and/or** property interest in the defendant funds identified in the Government's Verified Complaint." ECF No. 17 (emphasis added). In *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012), the Ninth Circuit held that "and/or" pleading was "not unequivocal[ ]", "not sufficiently specific" and "left open the possibility" of the claimant's potential interest. *Id.* at 640. It therefore "did not provide sufficient information to establish a lawful possessory interest" and "does not carry [the claimant's] burden" on standing. *Id.* A claim that leans on another claimant's "and/or" pleading cannot put standing beyond reasonable dispute.

On November 6, 2026, Capstone confirmed that its original claim "remains operative" and that it "continues to assert the same ownership and bailment interests" it asserted before. ECF No. 40. Given a

fresh opportunity to say who its bailors are, Capstone added nothing. *Id.*

Two days later, on November 8, 2026, the United States served its Amended First Set of special interrogatories, tailored to the Amended Complaint and to the claim Capstone has now reaffirmed. ECF Nos. 41-42.

## III. ARGUMENT

The plain text of the Supplemental Rules compels denying Capstone's motion. A claimant files a claim. The government may serve special interrogatories to test their claim and standing. The claimant has 21 days to answer or object. Only then must the government respond to the claimant's motion to dismiss. Capstone wants a ruling on the merits before demonstrating it has the right to ask for one. Nothing in Rule G permits that, and no Ninth Circuit decision has ever excused a claimant from it, least of all a claimant whose claim does not even name its "customers."

### A. The Supplemental Rules Set the Order, and Capstone Gives No Reason to Depart From It.

Rule G governs every step of a civil forfeiture case, and it is specific about this one. The government "may serve special interrogatories limited to the claimant's identity and relationship to the defendant property" at any time after the claim is filed. Supp. R. G(6)(a). However, "if the claimant serves a motion to dismiss the action, the government must serve the interrogatories within 21 days after the motion is served." Id. The claimant must serve "[a]nswers or objections" within 21 days. Supp. R. G(6)(b). And "[t]he government need not respond to a claimant's motion to dismiss the action under Rule G(8)(b) until 21 days after the claimant has answered these interrogatories." Supp. R. G(6)(c). If the answers show that the claimant lacks standing, the government may move to strike the claim, a motion that "must be decided before any motion by the claimant to dismiss the action." Supp. R. G(8)(c)(ii)(A).

That text is plain, and it contains no exceptions. The subdivision's title says it most simply: "Government's Response Deferred." Rule G(6)(c) has only two conditions: the claimant has moved to dismiss under Rule G(8)(b), and the government has served special interrogatories. Both are met here. ECF Nos. 35, 41. When the text of a rule is plain, the text controls. *See, e.g., Republic of Ecuador v. Mackay*, 742 F.3d 860, 864 (9th Cir. 2014). Capstone points to no language that lets a claimant opt out by declaring its own standing undisputed. There is none. Courts applying the rule have followed its text and

required answers before the government's response to a motion to dismiss comes due. *See, e.g.*, *United States v. $306,900 in U.S. Currency*, 2025 WL 1583540 (S.D. Ill. 2025); *United States v. $3,840,772.58*, 2023 WL 5762414, at *4 (E.D. Mich. 2023).

The text and structure of Rule G control. *See Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 158 (2026) (procedural rules expressly state exceptions to general requirements). Only a claimant "who establishes standing to contest forfeiture" may move to dismiss. Supp. R. G(8)(b)(i). A claimant without standing has no right to challenge the forfeiture at all and cannot reach the merits. *United States v. Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193–94 (9th Cir. 2004). The interrogatories are how standing gets tested, so they come first. As the Second Circuit put it, a claimant "cannot escape answering the government's interrogatories by instead bringing a motion to dismiss. Without standing, he is simply a stranger to the litigation." *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). Capstone's motion would invert that design: merits first, standing later, if ever.

**B. Capstone's Claim Is Deficient Anyway.**

Capstone's claim fails in two independent ways. It does not comply with Rule G(5), which requires a bailee to identify its bailor and its authority. And the bailment it asserts may not exist at all under California law. Either way, Capstone's standing is in dispute, and the interrogatories are how that dispute gets resolved.

A bailment is different from an ordinary ownership or possessory claim. The bailee claims a possessory interest based on someone else's ownership. That is why the Supplemental Rules treat bailees separately. Rule G(5) has a subsection just for them: "A claim filed by a person asserting an interest as a bailee must identify the bailor, and if filed on the bailor's behalf must state the authority to do so." Supp. R. G(5)(a)(iii). And it is why the Advisory Committee contemplated interrogatories into "the bailor's interest in the property and the bailee's relationship to the bailor." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 642–43 (9th Cir. 2012). When the claimant's interest depends on someone else's, the rules require the claimant to say who that someone is.

Capstone's claim does not. It claims more than 99 percent of the funds as "bailee for EQIBank Limited and its customers." ECF No. 13. It never identifies a single customer, and it states no authority to

act for any of them. Nor does it meet the pleading standard Capstone itself quotes. *See* ECF No. 13 ("Under Supplemental Rule G(5)(a)(i), a claim identifies the claimant, the property, and the claimed interest to put the government and the Court on notice of the claim's basis and the property's source.") (citing *United States v. Real Property*, 135 F.3d 1312, 1317 (9th Cir. 1998). A possessory claim must be "supported by some factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *$133,420.00 in U.S. Currency,* 672 F.3d at 638; ECF No. 37 at 5–6. Capstone's claim offers a label and nothing more: no account of how it came to hold the property, from whom, or on what terms.

The claim's silence matters because whether Capstone is a bailee at all is genuinely disputed. Whether a bailment exists is a question of state property law. *United States v. Hooper*, 229 F.3d 818, 820 (9th Cir. 2000). In California, a bailment "is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1490 (2006). Capstone may not fit that definition for at least three reasons.

First, California law "expressly excludes money from the concept of bailment." *Credit Managers Ass'n v. Brubaker*, 233 Cal. App. 3d 1587, 1592 (1991). Nearly everything Capstone claims as bailee is money or its equivalent: dollars in bank and brokerage accounts, the proceeds of Treasury securities, and dollar-pegged stablecoin. Second, a bailment requires a bailor who gave the bailee possession. Capstone names "EQIBank Limited and its customers," but EQIBank is a separate entity from its customers, and the customers are separate from one another. And the Amended Complaint alleges that the funds never passed through EQIBank at all. *See* Amended Complaint, ECF No. 28 at ¶¶ 17, 37-40, 45, 67-71. Who, if anyone, gave Capstone possession of what, and on what terms, is an open question that Capstone's claim does not begin to answer.

Third, what Capstone held was not a bailor's property but its own claims against its banks. A bailment turns on possession of specific property that the bailee must keep and return. That is not what Capstone held. When money is deposited in a bank, "the bank ordinarily becomes the owner of the funds," and the depositor holds only a claim against the bank for the amount. *Shaw v. United States*, 580 U.S. 63, 66 (2016). Securities credited to a brokerage account work the same way: the account holder

holds a security entitlement against the intermediary, not the securities themselves. *See* Cal. Com. Code §§ 8102(a)(7), 8501. The defendant accounts were opened in Capstone's name, and only Capstone could direct them. The Amended Complaint alleges exactly that: by having funds and securities credited to accounts "maintained solely in Capstone's name," Capstone "obtained security entitlements" and "deposit claims" that let it direct the sale, transfer, and disbursement of the assets. Amended Complaint, ECF No. 28 at ¶¶ 5(a), 91.

Whatever EQIBank or its customers delivered, what Capstone held were claims against Wells Fargo and Chase that belonged to Capstone alone. That is the position of an account holder, not a bailee keeping identified property for its required return. *See Meyer Koulish Co. v. Cannon*, 213 Cal. App. 2d 419, 427 (1963) (bailed property is delivered "for some particular purpose," and "after the purpose has been fulfilled it shall be redelivered"). If Capstone contends its own claims against its own banks were held in bailment for others, it must explain how. Only Capstone's answers can do that.

The government does not ask the Court to resolve these questions now. It asks only that Capstone answer them, as Rule G(6) requires. Capstone's claim fails Rule G(5) on its face, and whether Capstone is a bailee at all is disputed. That puts the claim squarely within what Rule G(6)(a) is for: the rule "broadly allows the government to collect information regarding the claimant's 'relationship to the defendant property.'" *$133,420.00*, 672 F.3d at 642. A claim that will not say whose property it holds is not "not reasonably in dispute." It is disputed.

**C. Nothing in the Ninth Circuit's Decisions Exempts Capstone From the Rules.**

Capstone stitches together three Ninth Circuit decisions, *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, *United States v. $1,106,775.00 in U.S. Currency*, 177 F.4th 986, 992 (9th Cir. 2026) (en banc), and *United States v. Real Property Located at 17 Coon Creek Rd.*, 787 F.3d 968 (9th Cir. 2015), to grant itself an exemption that appears nowhere in Rule G. ECF No. 37 at 5–9. The cases will not bear that weight. They differ from this case in meaningful ways, and on the question Capstone actually presents, they hold the opposite of what Capstone needs.

Start with what those cases were about. Every claimant asserted their own interest in property. None claimed to hold it for someone else. *Compare 17 Coon Creek Rd.*, 787 F.3d at 976 (claimant filed a

claim to real property as an "innocent owner")[2] *with* Capstone's Claim, ECF No. 13 (Capstone "is the bailee" for "bailor EQIBank Limited and its customers."). None had to identify a bailor, state authority to act for one, or explain a relationship that depends on another party's ownership. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d at 636 ("Two of th[e] [claimant's] boxes contained decorative rocks. The third contained a set of black throwing daggers and $133,420 in United States currency."). Capstone's claim rests almost entirely on that kind of relationship, *see, e.g.,* ECF No. 13, which is why the rules treat it separately and require a bailee to identify its bailor and its authority. Supp. R. G(5)(a)(iii). Capstone's cases had no occasion to address that requirement, and Capstone's claim does not meet it.

The cases also began from a connection to the property that answered the standing question. In *Coon Creek*, the claimant alleged he was an innocent property owner and the government's own complaint alleged that the claimant was the record owner, so his interest was not in dispute. 17 *Coon Creek Rd.*, 787 F.3d at 977. In *$133,420.00* and *$1,106,775.00*, the government seized cash from the claimants themselves, and the only question was whether they could explain their possession. *See $133,420.00 in U.S. Currency*, 672 F.3d at 636. Here, by contrast, the accounts are in Capstone's name, but Capstone does not claim to own what is in them. It disclaims ownership of more than 99 percent and says it holds the property for EQIBank and unnamed customers. Its name on the accounts shows that Capstone held the property. It says nothing about whose property it was, or whether a bailment existed at all. And the Amended Complaint does not admit those facts. It alleges the opposite: the funds never passed through EQIBank's accounts; Capstone's operator told the FBI that the Treasury securities belonged to a foreign cryptocurrency company; and Capstone told Wells Fargo the money was its own capital. Amended Complaint, ECF No. 28 at ¶¶ 4, 17, 43. *17 Coon Creek* arguably excuses a claimant from supplementing its claim only where "the government had admitted facts sufficient to establish the claimant's interest." 787 F.3d at 977. The government's allegations here do the reverse. They are why Capstone's interest is in dispute.

Most important, the claimants in *$133,420.00* and *$1,106,775.00* *answered* the government's

[2] "An innocent owner is an owner who (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." *United States v. Ferro*, 681 F.3d 1105, 1113 (9th Cir. 2012)

interrogatories. They are therefore the wrong cases to lean on. Louis, the claimant in *$133,420.00,* asserted ownership in his answer, and the fight was over his refusal to answer follow-up interrogatories. 672 F.3d at 640–42. Porcelli, the claimant in *$1,106,775.00*, answered too, and the Court decided whether his answers were enough. 177 F.4th at 997. Both cases are about what happens after a claimant responds. Neither suggests a claimant may decline to respond at all.[3]

Capstone certifies its own standing, excuses itself from Rule G(6), and then asks the Court to rule on a motion only a claimant who has established standing may bring. No court has ever relieved a claimant of the obligation to answer Rule G(6) interrogatories. Not one of Capstone's cases did. Even *17 Coon Creek*, the most claimant-friendly of the three, held the opposite. The district court there struck the claim because the claimant had not answered the government's interrogatories. The Ninth Circuit held that striking the claim was an abuse of discretion, not because the claimant was excused from answering, but because the district court should have ordered him to answer instead. *17 Coon Creek*, 787 F.3d at 977. The court was explicit that its decision did not "deprive the government of its entitlement to 'adversarial testing' of Pickle's continued standing," and did not "divest[] district courts of their authority to compel compliance with Rule G(6)." *Id.* That is all the government asks for here: an order requiring Capstone to answer.

That is the confusion at the heart of Capstone's motion. Capstone treats a sufficient claim as a waiver of Rule G(6), as if pleading the right words exempts a claimant from interrogatories. ECF No. 37 at 6, 9. *$1,106,775.00* addressed that argument directly and rejected it. It began by agreeing that Porcelli had standing: "if Porcelli's responses were all we had, they would have been sufficient to survive a motion for summary judgment." 177 F.4th at 997. But it held that this did not end the inquiry: "Porcelli overlooks the fact that even though his responses were sufficient to establish Article III standing at this stage, the government could still tee up a challenge to his stated basis for standing." Id. As the court explained:

> The government need not accept Porcelli's claim of ownership at face value. Instead, it is entitled to investigate Porcelli's factual account to see if

[3] Indeed, the *17 Coon Creek* court took care to limit its holding. It explained that its decision does not "deprive the government of its entitlement to 'adversarial testing' of Pickle's continued standing," and does not "divest[] district courts of their authority to compel compliance with Rule G(6) or, indeed, to strike a claim pursuant to Rule G(8)(c)(i)(A) based on a claimant's persistent failure to do so." 787 F.3d at 977.

> it holds up. Our cases thus make clear that the government is entitled to test Porcelli's ownership claim, including through reasonable use of Rule G(6) interrogatories.
>
> *Id.* at 997.

Even as to the two interrogatories it found excessive, the court was clear that answers were still owed: "Porcelli surely could be required to respond to these two interrogatories to some extent at an early stage in the case, and he eventually did so." *Id.* at 998.

Standing and answering are separate obligations. A claimant with enough to survive summary judgment still had to answer. Capstone has much less, and wants to answer nothing. Capstone reads *$1,106,775.00* as creating a new exception to Rule G(6)'s mandate to respond to interrogatories. It did the opposite. It held that even a claimant whose standing is sufficient must submit to testing, and it warned that "claimants should not take their responses to Rule G(6) interrogatories lightly." *$1,106,775.00* 177 F.4th at 996. Capstone has not taken its responses lightly. It has not given any.

**D. If Capstone Objects to Particular Interrogatories, the Rules Provide the Remedy.**

Capstone cites no authority for staying discovery because a claimant objects to the government's special interrogatories. The Ninth Circuit decision it relies on asked whether a district court erred by striking a claim for insufficient answers to Rule G(6) interrogatories. *$1,106,775.00*, 177 F.4th at 991. The government asks for nothing of the kind. It asks only that the Court follow Rule G(6) and defer the motion to dismiss until Capstone answers. If Capstone objects to a particular interrogatory, the Federal Rules of Civil Procedure tell it how to raise the objection: state it with specificity, and answer to the extent the interrogatory is not objectionable. Fed. R. Civ. P. 33(b)(3)–(4). What Capstone may not do is object to some interrogatories and refuse to answer all of them.

Capstone's objections to scope do not change that. Rule G(6) limits subject matter, not number. *$1,106,775.00*, 177 F.4th at 993. And even the interrogatories the en banc court found excessive were ones the claimant "surely could be required to respond to . . . to some extent at an early stage in the case." *Id.* at 998. The remedy for an overbroad interrogatory is a narrower answer or a particularized objection, not a stay of every question. The government has also since served an Amended First Set, tied to the Amended Complaint and to the claim Capstone has reaffirmed. ECF Nos. 40–42. Many of the questions Capstone attacked are no longer in the operative set.

Nor does Capstone's claimed ownership of a sliver of the property change the sequence. Rule G(6)(c) makes no exception for a claimant that asserts ownership of part of the property. Capstone claims to own about $55,000 in one bank account and about 54,500 USDT in one wallet. At most, those claims could support standing as to those two assets, not the $79 million brokerage account, the Chase account, or the second wallet, which Capstone claims only as bailee. And Capstone's ownership claim cannot be separated from its bailment claim, because Capstone did not keep the money separate. It says about $55,000 in the Wells Fargo x7500 account is its own and the other $1.8 million in the same account belongs to EQIBank's customers, without saying how the two were kept apart. The interrogatories ask exactly that.

**E. Capstone's Remaining Arguments are Insubstantial.**

Capstone's remaining arguments are quickly answered. The delay it complains of is its own doing: Rule G(6)(b) gave Capstone 21 days to answer, and it moved for a stay instead. And its request for in camera review of the seizure warrant affidavit misunderstands the inquiry. Standing is the claimant's burden. *$133,420.00*, 672 F.3d at 644. What the government knew when it sought a warrant says nothing about whether Capstone holds the bailment it claims. Only Capstone can answer that, and Rule G(6) requires it to.

Capstone also objected to the number of interrogatories served. ECF No. 25. But Rule G(6) imposes a limitation on subject matter, not a numerical cap. *See United States v. $1,106,775.00 in U.S. Currency*, 177 F.4th 986, 993 (9th Cir. 2026) (en banc) ("Unlike Federal Rule of Civil Procedure 33 interrogatories, Supplemental Rule G(6) interrogatories are not limited in number[.]"). The number of interrogatories tracks the number of gaps in Capstone's claim. Capstone filed a claim that identifies none of the bailor's customers, no agreement, and no terms. *See* ECF No. 13. It can hardly complain that filling those gaps takes more than a handful of questions. And Rule G(6)(b) gave Capstone two options: answer or object. *See id.* ("Answers or objections to these interrogatories must be served within 21 days after the interrogatories are served."). Capstone chose neither.

Capstone accuses the government of a "recurring and problematic pattern" of "non-responsive filing[s] that delay[] examination of the government's actions." ECF No. 37 at 7. The record shows otherwise. The government filed its complaint on July 15, 2026. ECF No. 1. Capstone took nearly three

months to file its claim, and EQIBank took longer still. ECF Nos. 13, 17. Both used the time the rules allowed, and the government does not fault them for it. The government has done the same: it served special interrogatories, as Rule G(6)(a) permits, and gave notice of the deferral Rule G(6)(c) prescribes. ECF Nos. 19, 20. Following the rules is not delay, least of all when the rules exist to test a claim as thin as this one.

If anything has slowed this case, it is Capstone's own choice. Rule G(6)(b) gave Capstone 21 days to answer. It moved for a stay instead. Had Capstone answered when its answers were due, the government's response to its motion to dismiss would be due before the end of this month. Capstone cannot refuse to take the step the rules require and then blame the government for the time it takes.

Capstone asks the Court to apply a two-part test that courts in this District use for stays of discovery in ordinary civil cases. ECF No. 37 at 5 (citing *Nat'l Labor Rels. Bd. v. California*, 2026 WL 3083862, at *2 (E.D. Cal. Oct. 15, 2026)). The government is aware of no decision applying that test to Rule G(6) special interrogatories, and Capstone cites none. There is a reason. The Federal Rules of Civil Procedure govern forfeiture actions only "[t]o the extent that [Rule G] does not address an issue." Supp. R. G(1). Rule G addresses this issue directly. Rule G(6)(c) decides when the government must respond to a claimant's motion to dismiss: after the claimant answers. A judge-made test for ordinary discovery stays cannot override a specific rule that already resolves the question.

Even on its own terms, the test favors the government. Its first prong asks whether the pending motion is "dispositive on the issue at which discovery is directed." *Id.* It is not. The interrogatories are directed at Capstone's standing. Capstone's motion to dismiss attacks the sufficiency of the Amended Complaint; it does not establish Capstone's standing, it assumes it. Its second prong asks whether the motion "can be decided absent additional discovery." *Id.* It cannot. Only a claimant "who establishes standing" may move to dismiss at all. Supp. R. G(8)(b)(i). Until Capstone's standing is tested, its motion cannot be reached, let alone decided.

And a "preliminary peek" at the merits, *Apothio, LLC v. Kern Cnty.*, 2023 WL 2655847, at *6 (E.D. Cal. Mar. 27, 2023), shows the same thing. Before the Court can look at Capstone's motion, it must first ask whether Capstone has a right to bring it. That is the question the interrogatories ask, and the question Capstone refuses to answer.

## IV. CONCLUSION

Capstone cannot claim standing, refuse to substantiate it, and then demand dismissal before the government can challenge it. The Supplemental Rules set the order: interrogatories, answers, and only then the motion to dismiss. Nothing in Rule G or in the Ninth Circuit's decisions excuses Capstone from that order, least of all a claim that does not name the customers whose property Capstone says it holds.

The United States respectfully requests that the Court deny Capstone's motion to stay discovery and order Capstone to serve answers, or particularized objections, to the United States' Amended First Set of Special Interrogatories within 14 days of the Court's order.

Dated: November 9, 2026

ERIC GRANT
United States Attorney

By: /s/ Kevin Khasigian
KEVIN C. KHASIGIAN
Assistant United States Attorney